# Fisher *v.* Wister, Appellant.

*Will—Designation of property—Executory devise.*

Testator, in the second paragraph of one of the clauses of his will, gave a portion of an estate known as the Wakefield Mills in trust for his two grandsons, naming them. In the third paragraph he gave the remaining portion of the Wakefield Mills estate in trust for the two grandsons and their sister, naming all the persons. Immediately after the gift was a reference to the property devised to the grandsons in the second clause. Following this reference was the following: " I hereby forbid that the property shall be sold out of the family, but leaving them to dispose of their respective parts by will. In case of the death of either one of them intestate without direct heirs, I direct that such intestate part shall be held by his sister. I bequeath this property to my two grandsons under the following conditions," etc. In the third paragraph was a direction to the trustees to sell any of the property herein designated as belonging to the three grandchildren, and invest the proceeds for their benefit. *Held,* (1) that the direction forbidding the property to be sold out of the family applied to the property given to the two grandsons in the second paragraph; (2) that the attempt at an executory limitation in case of the death of the grandsons, intestate, without direct heirs, transgressed the rule that it must not be within the power of the first taker to defeat the devise over either by the execution of a deed or a will.

*Trusts and trustees—Active duties—Executed use.*

Testator further directed in the third paragraph as follows: " In creating this trust I design not to burden the trustees with any unnecessary care or responsibility, or to hold them responsible for any lapse. My object being easily understood to secure the property for children who from their youth are not accustomed to the proper management of estates." No active duties were given to the trustees. *Held,* that after the beneficiaries had passed the period of youth the trust was executed.

Argued Jan. 20, 1893. Appeal, Nos. 42 and 146, Jan. T., 1893, by defendants, William Rotch Wister, surviving trustee under will of William Logan Fisher, and Mary R. Carpenter, from decree of C. P. No. 4, Phila. Co., on bill in equity. Be-

fore PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOL-
LUM, MITCHELL and DEAN, JJ.

Bill in equity to obtain construction of will and for convey-
ance.

The case was referred to Richard C. Dale, Esq., as master,
who reported as follows:

" The bill was filed by Ellicott Fisher, a devisee under the
will of his grandfather, William Logan Fisher, against William
Rotch Wister, trustee under the will of said William Logan
Fisher, and Mary R. Carpenter, a devisee under the will, to ob-
tain a construction of said will and a determination of the re-
spective rights and estates of the parties thereunder, and pray-
ing for a conveyance ʼby William Rotch Wister, as trustee, to
the complainant, of the estate to which he might be entitled.
The defendants' answers raised no material issues of fact, but
submitted the questions of construction to the court.

" William Logan Fisher died September 9, 1862, leaving a
will bearing date March 6, 1862, and three codicils, the first
dated March 7, 1862, the second not dated, and the third dated
May 5, 1862, which was duly probated in the office of the reg-
ister of wills of Philadelphia county. Mr. Fisher was the owner
of large landed estates, known as Wakefield and Belfield, which
occupied most of the territory between the Germantown Rail-
road and the Old York road, Fisher's lane and Duy's lane.
By his will these estates were divided in specified parcels and
upon defined trusts between his children and their families, who
were Thomas R. Fisher, Sarah L. Wister, Elizabeth R. Fisher
and Mary R. Fox.

" The clause of the will which gives rise to the present con-
troversy is the eighth paragraph, the material portions of which
are as follows:

" ' Eighth. I give and bequeath my Wakefield and Belfield
properties as follows:

" ' First. To my son-in-law William Wister and Samuel M.
Fox my grandson William Rotch Wister and my daughter-in-
law Letitia E. Fisher, their heirs and assigns or the survivor
or survivors of them all that property known as the Wakefield
Mill property partly bought of Thomas Roberts (and lately in
the tenure of my son together with his house) and all the land

extending back to line of the Belfield farm. . . . I estimate it
to contain about 40 acres be the same more or less. . . . In
trust nevertheless that they shall hold the dwelling house to-
gether with four or five acres of land corresponding with one
of the squares in the Philadelphia plot, adjoining or around it,
for the sole use and benefit of my daughter-in-law Letitia R.
Fisher, widow of my son Thomas R. Fisher during her life.
That then by the proper conveyances or in the lapse of any
such conveyance, the said house and lot shall descend to the
three children of my said son, Mary Carpenter, Ellicott Fisher
and Harvey Fisher, in equal parts as tenants in common and
free from all encumbrances.    Hereby forbidding that any mort-
gage or lien of any kind shall be created or placed upon the
property, it being now clear.

" ' Second. I give and bequeath to my two sons-in-law and to
my grandson and daughter-in-law aforesaid in trust for the ben-
efit of my two grandsons Ellicott and Harvey Fisher all that
estate known as the Wakefield Mills, consisting first of the
property bought of Thos. Roberts—second of that part that has
been known as the Fulling Mill with two three-story stone
houses and the land connected therewith. . . . This is part of
the property heretofore devised to my son Thomas, now deceased
and which I estimate may contain from two to three acres of
land exclusive of the Roberts land which itself is four and a
half acres.    It also contains the retail store buildings which
was erected by my son exclusively from his own money.    The
Wakefield Mills property purchased of Thomas Roberts con-
tains a mill nearly adjoining Charles J. Wister's land also
erected by my son at his own expense.    It also contains two
frame dwelling houses in the lower meadow.    The rest of the
Wakefield Mills though added to and improved in some in-
stances by Thomas R. Fisher, were substantially my own.

" ' Third. I also give and bequeath to my two sons-in-law, my
grandson and my daughter-in-law, and to their heirs and assigns
in trust for the equal benefit of the three children of my son
Thomas R. Fisher, to wit, Mary R. Carpenter, Ellicott Fisher
and Harvey Fisher in equal proportion as tenants in common
all the residue of the Wakefield Mills property, being all the
land known as the Wakefield Mills property with the exception
of the two bequests mentioned above.    The one of the Man-

sion House for the benefit of my daughter-in-law Letitia R.
Fisher, and the other the Wakefield Mills proper for the ben-
efit of Ellicott and Harvey Fisher reserving through this lat-
ter property the right of way to the Mansion House. I hereby
forbid that the property shall be sold out of the family, but
leaving them at liberty to dispose of their respective parts by
will. In case of the death of either one of them intestate with-
out direct heirs, I direct that such intestate part shall be held
by his sister Mary R. Carpenter. I bequeath this property to
my two grandsons under the following conditions. 1st. That
it shall pay a mortgage for $4,500, now existing on that part of
it received from Thomas Roberts. . . . I also make this Mill
property now bequeathed to my two grandsons, subject to the an-
nual payment to their mother Letitia R. Fisher of one thousand
dollars payable quarterly, provided always, that the property
shall rent for that sum, if not then for the full rent deducting
taxes and necessary repairs.

" ' I authorize my trustees aforesaid to sell any part of the
property herein designated as belonging to the three children
of Thomas R. Fisher, the proceeds to be invested for their ben-
efit or to dispose of the same on ground rents.

" ' In creating this trust, I design not to burden the trustees
with any unnecessary care or responsibility or to hold them re-
sponsible for any lapse, my object being easily understood to
secure the property for children who from their youth are not
accustomed to the proper management of estates.'

" In the second codicil is found the following clause :

" ' First. Lest the words regarding the trusts in favor of the
heirs of my son Thomas R. Fisher, created by the will may not
be legally sufficient in form, while my intentions may be fully
understood I hereby authorize my executors to fill up any lapse
or deficiency if such appears to be the case in the way of deeds
or otherwise so as to fulfill to all intents and purposes the de-
signs which I have expressed.'

" Letitia R. Fisher, the mother of the plaintiff, died, May 23,
1881 ; Harvey Fisher, the plaintiff's brother, died August 31,
1885, intestate, unmarried, and without issue or parents ; the
plaintiff, Ellicott Fisher, and the defendant, Mary R. Carpen-
ter, are his only surviving brother and sister and his heirs at
law. The mortgage debt of $4,500, referred to in the will, was

paid off in 1865, and the annuities have ceased by the death of the annuitants.

" Upon this statement of facts, two questions arise :

" 1st. To what portion of the property does the clause apply, which is expressed by the testator in the third paragraph of the eighth article of the will in words following :

" ' I hereby forbid that the property shall be sold out of the family but leaving them at liberty to dispose of their respective parts by will. In case of the death of either one of them intestate without direct heirs, I direct that such intestate part shall be held by his sister, Mary R. Carpenter.'

" 2d. Did the testator, by the language used, create a valid executory devise in favor of Mary R. Carpenter of the property to which this clause applies or is the clause an ineffective effort to restrain alienation, and to deprive the devisees of powers which the law confers upon them as owners in fee.

" 1st. To what property does the clause quoted apply? The plaintiff contends that it applies only to the property referred to in the second paragraph of the eighth article of the will, given to the trustees ' in trust for the benefit of my two grandsons Ellicott and Harvey Fisher.'

" The defendants contend that the cause applies not only to the Wakefield Mills property described in the second paragraph of the eighth article, but also to the estate described in the third paragraph of the eighth article devised ' in trust for the equal benefit of the three children of my son, Thomas R. Fisher, to wit, Mary R. Carpenter, Ellicott Fisher, and Harvey Fisher in equal proportions as tenants in common.'

" The defendants' contention is supported by the fact that the clause under construction is found in the third paragraph of the eighth article, and, therefore, unless there were other prevailing reasons, would more naturally apply to the property disposed of in that clause ; but, on the other hand, the will was not drawn by counsel. A reading of the instrument exhibits a confusion of expression and arrangement, of which the testator himself seems to have been somewhat conscious, as appears from the first clause of the second codicil.

" Furthermore, the clause under consideration immediately follows a reference to the property devised in the second paragraph of the eighth article for the benefit of Ellicott and Har-

vey Fisher. It is not, therefore, a forced inference to presume a connection in testator's mind between property which he had just described, and that to which he desired to fix a limitation.

"But in the opinion of the master, a conclusive inference can be drawn from a consideration of the language of the clause itself. The persons upon whom the restriction or limitation was imposed were Ellicott and Harvey Fisher. The testator leaves them, 'to wit, Ellicott and Harvey at liberty to dispose of their respective parts by will, and in case of the death of either one of them, intestate, without direct heirs, I direct that such intestate part shall be held by his sister, Mary R. Carpenter.'

"As the restriction and limitation by express language is limited to the grandsons, the clause by natural construction must be referred to the property which the testator had devised for the benefit of these grandsons. This conclusion is fortified by a reading of the succeeding clause of the same paragraph, in which the testator says: 'I bequeath this property to my two grandsons under the following conditions,' indicating that the property to which the testator had just referred was that which he had given to his two grandsons. The conditions also which follow are applicable only to this property as distinguished from the 'residue of the Wakefield Mills property,' devised for the three grandchildren. It would thus appear that while the first six lines of the third paragraph of the eighth article refer to this residue, the remainder of the paragraph with the exception of the last seven lines refers to the property already described in the second paragraph, and introduced into the third paragraph as an exception not included in the devise of the residue. Towards the end of the third paragraph the testator again refers to the residue of the Wakefield Mills property and authorizes his trustees 'to sell any part of the property herein designated as belonging to the three children of Thomas R. Fisher, the proceeds to be invested for their benefit or to dispose of the same in ground rents.' This is a provision inconsistent with that expressed in the clause under consideration, and indicates that as to the estates devised for the benefit of the three grandchildren, the trustees should possess a power of sale, while as to the tracts devised in trust for the two grandsons Ellicott and Harvey Fisher no power of sale

is given, and the testator undertook to expressly forbid alienation by deed.

" The master is therefore of opinion and so reports that the clause which is before the court for construction applies only to the Wakefield Mills property, devised by the testator in trust for Ellicott and Harvey Fisher in the second paragraph of the eighth article of the will.

" 2d. Was a valid executory devise created by the testator?

" By the terms of the will the estate is devised to two trustees 'in trust for the benefit of my two grandsons Ellicott and Harvey Fisher.' If there were no other provision in the will Ellicott and Harvey Fisher would clearly take a fee. There is no limitation or qualification of the original gift, and so far as the provisions of the clause of the will express the intent of the testator no actual trust was created; at the close of the third paragraph the testator added the words : ' In creating this trust I design not to burden the trustees with any unnecessary care or responsibility, or to hold them responsible for any lapse, my object being easily understood to secure the property for children who from their youth are not accustomed to the proper management of estates.'

" As the parties for whom the trust was created have passed the period of youth, which in the testator's judgment disqualified them from the management of their estates, the purpose of the trust so far as expressed has ceased.

" This brings us to the main question of the case : Do the words used by the testator—' I hereby forbid that the property shall be sold out of the family, but leaving them at liberty to dispose of their respective parts by will. In case of the death of either one of them intestate without direct heirs, I direct such intestate part shall be held by his sister, Mary R. Carpenter'—reduce the fee simple which the will otherwise vested in Ellicott and Harvey Fisher into a qualified fee, subject to a valid executory devise in favor of Mary R. Carpenter, taking effect in the event of the death of either of the first takers intestate and without direct heirs?

" Upon this question the master is of opinion that a fee simple was vested by the will in Ellicott and Harvey Fisher, and that the attempts at executory limitation in case of their death intestate, without direct heirs, transgress the rule that it must

not be within the power of the first taker to defeat the devise over either by the execution of a deed or will.

"This rule was recognized by Chancellor KENT, in the leading case of Jackson v. Robins, 16 Johnson, 537, in an opinion where all the ancient learning upon the subject is collected and reviewed. The syllabus of the case is: 'Where A. devises all his real and personal estate to his wife, and in case of her death without giving, etc., by will or otherwise selling or assigning the said estate, then he devises the same to his daughter D., A. takes the entire fee simple, both by force of the word estate and of the absolute power given by the will, and the subsequent limitation, being repugnant thereto, is void, either as a remainder (which cannot be limited on a fee) or as an executory devise, to the validity of which it is essential that it cannot be defeated by any act of the first taker. The same rules apply whether the limitation is of real or personal property; in either case it is void. Where there is a devise for life, in express terms, a power of disposal annexed does not enlarge it to a fee; but where to a general devise, without any specification of the quantity of interest, an absolute power of disposal is annexed, the devisee takes a fee.'

"In the course of the argument, reference was made to the prior decision of Jackson v. Bull, 10 Johns. 19. Referring to the allusion, Chancellor KENT said: 'I am obliged still to be of the opinion, that it was a well-founded decision. Suffer me, for one moment, to re-examine its foundations. *Redit labor actus in orbem.*

"'The testator, in that case, devised to his son Moses and to his heirs and assigns forever, a lot of land, and then added, that, in case his son should die without lawful issue, the property he died possessed of, he gave to his son Young. Moses, the son, did die in possession of the property, and without lawful issue, but he devised it by will to his wife and others, under whom the plaintiff claimed, in opposition to the devise over to the other son.

"'The counsel for the plaintiff contended that the limitation over by way of executory devise was void, because repugnant to the absolute power of disposal given by the will to Moses, who was thereby enabled to defeat it. The court unanimously acceded to that principle and cited authorities in support of it and gave judgment for the plaintiff.

" ' The first case that the court then relied upon was that of The Attorney General v. Hall, Fitzg. 314, decided in 1731 by Lord Chancellor KING, assisted by the master of the rolls and Chief Baron REYNOLDS. Hall, the testator, owning real and personal estate, gave it by will to his son and to the heirs of his body, and if he should die leaving no heirs, then he gave so much of the real and personal estate as his son should be possessed of at his death to the Goldsmith's Company at London for charitable purposes. A limitation over for such a purpose had strong claims upon the protection of a court of chancery; and I hope that I may be excused for making, as a passing remark, that the will awakens interesting associations from another circumstance, which is, that Sir Isaac Newton was one of the executors. The son alienated the real estate by a common recovery, and bequeathed the personal estate by will to his wife, and died without issue. The question arose between the wife, claiming under the will, and the Goldsmith's Company, claiming by virtue of the limitation over on the event of the son dying without issue. The case was fully and ably argued, and there was no distinction made between the real and the personal estate as to the validity of the limitation over. The court were unanimously of the opinion that the Goldsmith's Company had no valid claim and that the limitation over was void, because the absolute ownership had been given to the son; for the property was given to him and the heirs of his body, the company were to have no more than he should leave unspent, and therefore he had a power to dispose of the whole. The words that gave him an estate tail in the land gave him the entire property in the personal estate and nothing remained to be given over by the testator.

" ' The point of that case then was, that where an estate is given to a man, and the heirs of his body, with a power of disposal, at his own will and pleasure, it carries with it an absolute ownership, repugnant to any limitation over and destructive of it. The court did not make any distinction between the real and personal estate, and say that the limitation over was good as to the one and void as to the other. They said, generally, that the limitation over in the will was void, because the testator gave the son an unqualified power to spend the whole.

" ' The other case that the court relied on in Jackson v. Bull, was Ide v. Ide, 5 Mass. 500, decided in the Supreme Court of Massachusetts in 1805.   There the testator gave by will, to his son, and to his heirs and assigns forever, certain real and personal estate, and then added, that if the son died without heirs, the estate which he should leave was to be equally divided between two other persons.   The son did die without leaving heirs, and the question arose between those claiming the real estate under the limitation over, and those claiming it under a conveyance from the son.   The opinion of the court was delivered by the late Chief Justice PARSONS, whose character, as a lawyer and a judge, is held in universal reverence.   He cited and relied upon the case of The Attorney-General v. Hall, and said that " whenever it is the clear intention of the testator that the devisee should have an absolute property in the estate devised, a limitation must be void, because it is inconsistent with the absolute property supposed in the first devisee.   And a right in the first devisee to dispose of the estate devised at his pleasure, and not a mere power of specifying who may take, amounts to an unqualified gift."   He then applied the rule to the case before him, and observed that " the absolute unqualified interest in the estate devised was given to the son, which was inconsistent with the limitation over, and, consequently, the limitation was void."

" ' The error in the case of Jackson v. Bull, said the learned counsel, was in applying the English case to the real estate, when it was applicable only to chattels.   But the Supreme Court of Massachusetts were then in the same error, for they equally so applied it.   " The limitation over," said Chief Justice PARSONS, " makes no distinction between the real and personal estate, operating only on such part of either as the first devisee should leave."   In both of these cases the devise was of real and personal estate in the same sentence, and the same limitation over was created as to each ; and neither the English nor the Massachusetts court admitted any difference in the rule of construction or in the operation of the power of alienation, whether applied to the limitation of the real or of the personal estate.

" ' I do not know that either of those two last decisions have ever been questioned in any court or by any author.   They

were pronounced by the highest judicial authorities ; and Lord HARDWICKE (1 Ves. Jr. 10) gives his sanction to the accuracy of the English case. Beachcroft v. Broome (4 Term, 441), decided in the K. B. in 1791, is in confirmation of the doctrine of the prior case. That was the case of a devise to B. and his heirs, and if he die without having settled, or otherwise disposed of his estate, or without leaving issue of his body, then the devise over. B. sold the premises in fee, and died without issue, and the question was, whether the purchaser took an estate in fee, and the K. B. held clearly that he did. The decision is entirely conformable to the doctrine in the Attorney-General v. Hall, and Ide v. Ide, and Jackson v. Bull ; but a single expression of Lord KENYON is seized upon, and a great reliance was placed upon it by the counsel for the plaintiff in this cause. Lord KENYON said (and it must have been in loose conversation on the bench) that if the case had turned on the question whether that was an estate tail in B., he should have thought it extremely clear that on failure of the first limitation the second ought to have taken effect as an executory devise. Perhaps the meaning of Lord KENYON is not to be clearly understood. It was an observation not required by the decision nor applicable to the point. But let it mean what it may, are we to permit such a loose remark to be of any weight or consideration in opposition to the deliberate and solemn judgments of the courts? It is enough, I apprehend, merely to mention such a dictum, and then to pass it by in silence.'

"It is true there is a distinction between the will of Lord Sterling, which was the subject of construction in the New York case, and that of William Logan Fisher now before the court, in that in the New York case the first taker had the power to defeat the executory devise by a conveyance by deed, as well as by testamentary provision, while in this case there is a prohibition against conveyance and only power to dispose of by will, but this distinction is not material if Chancellor KENT correctly stated the law to be—' That where an estate is given to a man and the heirs of his body with a power of disposal at his own will and pleasure, it carries with it an absolute ownership repugnant to any limitation over and des truction of it.'

"The master is not disposed to question the conclusion ex-

pressed by this learned judge and author, even though its correctness has been questioned in North Carolina and South Carolina. Although the exact question presented in this case has not been presented before the courts of Pennsylvania, the view expressed by Chancellor KENT has passed into the text-books as established law: Kent's Commentaries, vol. 4, page 269.

" Nor can an executory devise or bequest be prevented or destroyed by any alteration whatsoever in the estate out of which, or subsequently to which, it is limited. The executory interest is wholly exempted from the power of the first devisee or taker. If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over of the property which he, dying without heirs, should leave, or without selling or devising the same; in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will. A valid executory devise cannot subsist under an absolute power of disposition in the first taker. When an executory devise is duly created it is a species of entailed estate to the extent of the authorized period of limitation. It is a stable and unalienable interest, and the first taker has only the use of the land or chattel pending the contingency mentioned in the will: 2 Jarman on Wills, 495, note 3.

" 3. When the first taker has an absolute power of disposal by which the limitation over may be defeated there can be no valid executory devise: McDonald v. Walgrove, 1 Sandf. Ch. 274; so Ide v. Ide, 5 Mass. 500, where there was a devise to A, and if he die leaving no heir, ' what estate he may leave ' over; so Burbank v. Whitney, 24 Pick. 146; Burleigh v. Clough, 52 N. H. 267; Jackson v. Bull, 10 Johns. 19; Jackson v. Delancey, 11 Johns. 365, affirmed 13 Johns. 537; Jackson v. Robins, 15 Johns. 169, affirmed 16 Id. 537.

" In Armstrong v. Kent, 21 N. J. L. 509, it was held where real estate is devised in fee or personal estate bequeathed absolutely with a limitation over which would be otherwise good

by way of executory devise, if the will expressly or by implication confirms the power of disposition by will or otherwise, this defeats the limitation over. And this is the same whether the power be to dispose by will or by deed.

"In Holmes v. Godson, 8 De G., M. & G. 152, a testator gave real and personal estate upon trust for his son to vest in him on his attaining twenty-one years, but if he should die under twenty-one, or, having attained twenty-one, should not have made a will, the property to be sold and proceeds held for other trusts, it was held that the property vested in the son absolutely at twenty-one, and that the gift over was repugnant and void.

" While there is no satisfactory discussion of the question in the Pennsylvania cases, the correctness of the principle before stated, that a power in the first taker to completely dispose of an estate is inconsistent with and repugnant to a valid executory devise, seems to be admitted. See Jauretche v. Proctor, 48 Pa. 466 ; Karker's Ap., 60 Pa. 141 ; Gillmer v. Daix, 141 Pa. 505.

"And in the note by Mr. Henry Budd to 2 Leading Cases on Real Property, page 476, he says : 'An executory devise cannot take effect where there is a precedent estate devised and the absolute power of disposition of the land is vested in the first devisee : (Citing Flinn v. Davis, 18 Ala. 132 ; McRee's Adm'rs v. Means, 34 Ib. 363 ; Hall v. Robinson, 3 Jones Eq. 348 ; Stones v. Maney, 3 Tenn. Ch. 731 ; Ramsdell v. Ramsdell, 21 Me. 288 ; Cook v. Walker, 15 Ga. 457 ; Burbank v. Whitney, 24 Pitts. 146 ; Ide v. Ide, 5 Mass. 500 ; Jackson v. Coleman, 2 Johns. 391 ; Jackson v. Bull, 10 Ib. 19 ; Jackson v. Robins, 16 Ib. 537 ; Pickering v. Langdon, 22 Me. 413 ; Moore v. Sanders, 15 S. C. 440 ; Wead v. Gray, 78 Mo. 59 ; Alden v. Johnson, 19 N. W. R. 696). . . . The absolute power of disposition which avoids the executory devise must be one which permits the first taker of the fee to dispose absolutely of the very subject of both the executed and executory devise, the land itself, including the interest given by the devise over. As said by WALKER, C. J., in McRee's Adm'rs v. Means, 34 Ala. 360 : " What is meant by the absolute power of disposition which defeats an executory devise can best be ascertained by referring to the reason upon which the principle is founded.

One of the distinguishing properties of an executory devise is its indestructibility and its total exemption from the power and control of the first taker: Fearne on Rem., 418, 419, 420; 4 Kent's Com. 297. As a consequence of this characteristic of executory devises, when the testator's intention to place the limitation over under the power of disposition of the first taker appears, the executory devise is gone. The absolute power of disposal which defeats the limitation over is a power to destroy it by alienation, and not merely a power to alien the estate vested in the first taker. The citation of these cases and the reasoning upon which they proceed are abundantly sufficient to show that the absolute power of disposal in the first taker to which a limitation over is void for repugnancy is a power to dispose of the whole estate, including the limitation over, and in destruction of the limitation. Such power of disposition seems to be called absolute in contradistinction to the power of disposing of a limited fee vested in the first taker."

" ' Before proceeding to consider the cases in which the power of disposition under consideration by the court has been held to be absolute within the terms and meaning of the rule, and those in which it has been held not to be absolute within the rule, it is to be noted that the validity of the devise over is not to be determined by the event or by the exercise or non-exercise of the power, but by the nature and character of the power itself; if the first taker has an unlimited and absolute power to dispose of the entire fee free from any liability to defeat, then whether he choose to exercise it or not the limitation over becomes void, for its existence is incompatible with the absolute control vested by the law in his first taker, and the right or interest of the executory devise, in the face of the power of this first taker is too vague, doubtful, and uncertain to be recognized or entitled to any protection by the law.'

" The clause in Fearne, 418, to which reference is made above, is as follows: ' The great and essential difference between the nature of a contingent remainder and that of an executory devise (and that, indeed, which renders it material to distinguish the one from the other in their creation) consists in this : that the first may be barred and destroyed, or prevented from taking effect by several different means, as I have already shown, whereas it is a rule that an executory devise cannot be

prevented or destroyed by any alteration whatsoever in the estate out of which or after which it is limited.'

" The opinion expressed by the master in this report he believes to be in accordance with the weight of authority. It is only fair, however, to the defendants to say that the conclusion was reached by the master not without hesitation. Executory devises are recognized in Pennsylvania as valid testamentary dispositions of an estate.

" In Nicholson v. Bettle, 57 Pa. 384, there was a devise : ' To my two sons and their heirs respectively. The said house and premises to be held by them in joint tenure during the residue of their natural lives, and at their decease to pass to their heirs respectively. Should either of them decease without leaving lawful issue or heir said estate shall pass to the survivor of his heir, and should they both decease without leaving lawful surviving heir or heirs said estate may be sold and the proceeds of such sale be distributed amongst the surviving lawful heirs of my estate, share and share alike.'

" This was held to be a valid executory devise, but the will of Mr. Nicholson is distinguishable from that of Mr. Fisher in that in the former case the contingency upon which the executory devise took effect was the death of the first taker without issue ; under the Fisher will the contingency is double, death of the first taker ' without direct heirs ' and ' intestate.' The latter contingency involves the possession in the first taker of a testamentary power of complete disposition, whereby the executory limitations of the first testator might be rendered void and of no effect ; and this, under the authorities, as the master understands them, renders the executory limitations void ab initio.

" It is proper, however, to bring to the attention of the court the remarks of Mr. Henry Budd in a continuation of the note above referred to : ' It has been held that the power of disposition to have the effect of destroying the executory devise over must be general, not only in the sense in which the word is above used, but as to the means of conveyance or disposition, and that where the right of disposition of the first devisee is limited to any particular method of conveyance the limitation over will be good. Thus in Hall v. Robinson, 3 Jones Eq. 348, there was a limitation over on the death of the first taker with-

in a certain age, without issue, and intestate; it was held that the devisory power impliedly given by the condition of intestacy would not destroy the devise over. And see Andrews v. Roye, 12 Rich. S. C. 536.

" 'This distinction is not recognized in some authorities. Thus in Karker's Ap., 60 Pa. 141, there was a devise over in case Joseph Rex " should happen to die intestate and without issue," BREWSTER, J., in delivering the opinion of the orphans' court, said: " It will also be observed that the power in Joseph of making a will is fatal to the executory devise, if such it is to be called, in favor of William," citing, Jackson v. Robins, 16 Johnson, 537, and the Supreme Court, in affirming the judgment, refused to consider whether a definite or indefinite failure of issue was intended by the will, as it regarded the words " shall happen to the intestate " as manifesting an absolute fee simple in the first devisee. In support of this position, REED, J., cited 2 Jarman on Wills, page 15; citing Jauretche v. Proctor, 48 Pa. 466. . . . It is submitted, however, that the distinction is well founded in reason. It is true the books abound in cases which say that a condition repugnant to the estate granted cannot be sustained, and that a favorite example is the futility of an attempt to take from the grantee or devisee of a fee simple the power of alienation or disposition, but it is equally true that in the case of an executory devise the court does recognize a qualified fee simple, and the only reason that a general power of disposition added thereto will destroy a devise over, is that the general power adds to the qualified fee just these qualities in which the qualified fee was lacking, and therefore converts into an absolute fee simple, thereby exhausting the entire estate of the devisor, but if the devisor, after granting what the context of the will shows to be a qualified fee, adds thereto a restricted power of disposition, and expressly or impliedly permits the first taker to dispose of his estate by will, or expressly or impliedly permits him to dispose of it by deed or by other conveyance inter vivos, then, on the familiar principle *mentio unius est exclusio alterius*, it would seem to follow that as he cannot dispose of the estate in the way not named, the qualified fee is not enlarged or converted into an absolute one, and hence there still remains something to which the executory devisee may become entitled, and although the

future estate may be defeated by the exercise of this power by the first devisee, still his interest will be recognized and protected by the law against any attempt of the first taker to destroy it in any other way than that in which the will permits him, and against any claim of an absolute estate by him.'

"The learned annotator seems to recognize that the view to which he apparently gives approval, is not the rule accepted by the courts of Pennsylvania, and in one of the cases upon which he relies for support, the judge who delivered the opinion recognized that to sustain the counter-position he must hold that Chancellor KENT erred in holding that indestructibility of an executory devise through the act of the first taker was an essential requisite of a valid executory devise. The case referred to is Andrews v. Roye, 12 Rich., S. C., 536. Testatrix under a power of appointment devised the land to her two sons, to be equally divided between them, 'but should either of my sons die unmarried and without issue, then whatever may remain of his moiety, I give and devise to the survivor, but should both of my said sons die unmarried and intestate,' then over to others; it was held that this limitation over was valid, and consequently that the sons did not take an indefeasible estate in fee simple.

"In this case WARDLAW, J., repudiated the rule of Jackson v. Robins, saying: 'It is said to be of the essence of an executory devise, that it cannot be prevented or defeated by the first taker by any alteration of the estate out of which or after which it is limited, or by any mode of conveyance. This is altogether true as to the right of the first taker to bar this executory devise by fine or common recovery, but it is altogether fallacious, if pressed to the conclusion that the executory devise must be independent of the will or action of the owner of the precedent estate. In fact, all executory devises depend, to some extent, on the discretion of the first taker.

"'In the second limitation over, no general or unlimited power of alienation can be implied. The employment of the word intestate, as a condition may be well interpreted as conferring the power of disposing of the estate by will, but not of disposing of it by deed or otherwise. A power to alien in a particular mode must be pursued as to the mode, and is ineffectual if exercised differently. Partial restraint of aliena-

tion by the devisee may be well impressed by the testator in the object of his bounty. There is nothing to hinder a testator saying to his legatee, you may devise or appoint the land I have given to you, but you shall not convey it by deed. Co. Lit. 223–4; 6 East, 173. ' To the same effect is Hall v. Robinson, 3 Jones, Eq. 348. Where a general right of disposition is given to the taker of an estate a contingent limitation in remainder is inoperative and void, but a limitation to one, and if he should die before arriving at full age, or if he should arrive at full age and afterwards die intestate and without issue, then to A., B., and C. in remainder, was held not to give a general right of disposition, but that the limitation over was valid.

" But while the authorities last mentioned support the contention of the defendants the weight of authority is with the complainant.

" For the reasons thus given the master is of the opinion that the plaintiff is entitled to equitable relief and that a decree should be entered:

" First. That the trusts created by the will and codicils of William Logan Fisher relating to that part of the Wakefield Mills property devised for the benefit of Ellicott and Harvey Fisher are determined and ended.

" Second. That the trusts created by the will and codicils of William Logan Fisher relating to that part of the Wakefield Mills property devised for the benefit of the three children of testator's son, Thomas R. Fisher, to wit, Mary R. Carpenter, Ellicott Fisher, and Harvey Fisher, are determined and ended.

" Third. That William Rotch Wister, surviving trustee under the will of William Logan Fisher, deceased, do make, execute and deliver deeds of conveyance for said Wakefield Mills property as follows, to wit: for the part thereof devised for Ellicott and Harvey Fisher, a deed to Ellicott Fisher for one undivided three fourths part thereof in fee simple. For the part thereof devised for Mary R. Carpenter and Ellicott Fisher and Harvey Fisher a deed to Mary R. Carpenter and Ellicott Fisher in fee in equal shares as tenants in common.

" Fourth. That the costs of these proceedings, including the expenses and counsel fees of the trustee, be paid by Mary R. Carpenter and Ellicott Fisher in equal proportions."

Exceptions to the report were filed both by the surviving trustee and by Mary R. Carpenter, specifying the findings against them. The exceptions were dismissed by the court.

*Errors assigned* were dismissal of exceptions, quoting them.

*J. McGregor Gibb* for Wm. Rotch Wister, trustee.—The trusts created by the will are active trusts : Barnett's Ap., 46 Pa. 398; Rife v. Geyer, 59 Pa. 396; Dodson v. Ball, 60 Pa. 492 ; Ash v. Bowen, 10 Phila. 96 ; Yarnall's Ap., 70 Pa. 339; Berg v. Anderson, 72 Pa. 87 ; McGunnigle v. McKee, 77 Pa. 81.

*George Quintard Horwitz*, for Mary R. Carpenter.—The will created a valid executory devise : Nicholson v. Bettle, 57 Pa. 384; Mitchell on Real Estate, 241; Eby v. Eby, 5 Pa. 461; Berg v. Anderson, 72 Pa. 87 ; Hill v. Hill, 74 Pa. 173; McGunnigle v. McKee, 77 Pa. 81; Miller's Est., 29 W. N. 69; Karker's Ap., 60 Pa. 141; Middleswarth v. Blackmore, 74 Pa. 415; Langley v. Heald, 7 W. & S. 96 ; Taylor v. Taylor, 63 Pa. 481; Doe d. Gill v. Pearson, 6 East, 173; Daniel v. Ubley, Sir Wm. Jones, 137; Macleay's Case, L. R. 20 Eq. 186 ; Lightburne v. Gill, 3 Bro. P. C. 250 ; Bull v. Kingston, 1 Mer. 314 ; Watkins v. Williams, 3 Mac. & G. 622 ; Hall v. Robinson, 3 Jones, Eq. 348 ; Paul v. Hewetson, 2 Mylne & Keene, 435. The trust is not an active one : Yarnall's Ap., 70 Pa. 339 ; Ogden's Ap., 70 Pa. 501 ; Kay v. Scates, 37 Pa. 31; Koenig's App., 57 Pa. 352; Dodson v. Ball, 60 Pa. 492; Rea v. Trust Co., 16 W. N. 48 ; Doe d. Trumbull v. Gibbons, 22 N. J. L. 117; Hall v. Robinson, 3 Jones, Eq. 348 ; Andrews v. Roye, 12 Rich. (S. C.) 536.

*Charles L. Lockwood*, for Ellicott Fisher, cited: As to the executory limitation, McIntyre v. McIntyre, 123 Pa. 329; Rea v. Bell, 147 Pa. 118; Kepple's Ap., 53 Pa. 211; Reifsnyder v. Hunter, 19 Pa. 41 ; Shutt v. Rambo, 57 Pa. 149; Doebler's Ap., 64 Pa. 9 ; Karker's Ap., 60 Pa. 141; Gillmer v. Daix, 141 Pa. 505 ; Edwards v. Barnard, 34 Leg. Int. 274; Sprankle v. Com., 2 Walker, S. C. 420; Good v. Fichthorn, 144 Pa. 287 ; Church v. Disbrow, 52 Pa. 219.   On the execution of the trust, Dodson v. Ball, 60 Pa. 492.

PER CURIAM, January 30, 1893 :

We affirm this decree upon the clear and able report of the learned master below, and dismiss the appeal at the costs of the appellant.