## Hannach's Estate.

146

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Argued September 27, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*John A. Metz, Jr.,* with him *John A. Metz,* for appellant.

*John Joseph O'Connell,* for appellee.

*J. Kent Greene* and *H. L. Abrams,* for appellees.

OPINION BY MR. JUSTICE MAXEY, December 5, 1938:

This appeal arises from the construction of the residuary clauses of a testator's will. By the third paragraph of his will testator devised and bequeathed the residue of his estate to trustees to hold for a period of fifteen years following his death and to pay the net income semi-annually "to and among the following persons, and in the proportions hereinafter stated, to wit": testator then listed the names of various sisters, nieces and nephews, specifying that each should receive respectively from one- to four-sixteenths of the income from the trust for the period mentioned. The fourth paragraph of the will provided as follows: "At the end of said term of fifteen years after my death, I direct the principal of my estate to be divided and paid over to the respective par-

ties above named, who then may be in life and being, in the same proportion as the income aforesaid is directed to be paid to them, respectively. Should any of my sisters, nieces or nephews die before the time for distribution of the principal as aforesaid, then the share of the one so dying is to be divided and paid over to and among the survivors, in the same proportion as the income is directed to be paid to them, respectively."

The will was executed in 1924 and testator died in 1936. In 1934 his sister Jennie H. Stein, appellant's mother, who was given one-sixteenth of the income of the trust by the third clause of the will, died, and appellant's sister, Fay Louise Stein, who became entitled to four-sixteenths, died less than a month after testator's death. At the audit of the executrix's account appellant claimed, in addition to the one-sixteenth of the income left him by the third clause of testator's will, the four-sixteenths of his sister, as her executor, one-thirty-second as his sister's half share of their mother's one-sixteenth interest, and another thirty-second as one of his mother's next of kin. His contention in the court below, as it is here, was that the gifts of income for the fifteen-year period to his mother and sister passed to their estates; that in the case of the mother the legacy of income did not lapse as a result of her predeceasing the testator, but on the latter's death became immediately payable to her issue under section 15(b) of the Wills Act of June 7, 1917, P. L. 403 (20 PS sec. 252), substituting issue for a deceased legatee; and that in the case of the sister her share of income passed at her death to her estate for the balance of the term, there being no gift over upon the death of any of the income legatees prior to the termination of the fifteen-year period.

Appellant's claim was denied by the court below, which held that the second sentence of the fourth paragraph of the will (quoted above) carried to the surviving legatees not only the remainder interest in principal of a legatee who failed to survive the termination of the

trust, but her intermediate gift of income as well. The question is: Does the phrase used by the testator in the quoted passage, "the share of the one so dying," refer only to a share of the principal or does it refer as well to the shares of income which would otherwise be payable to the legatees during the whole period of fifteen years during which the trust is to continue? If the former, then the testator has made no express provision for the event which has occurred and the applicable rule of law is as stated most recently in *Wood's Estate*, 321 Pa. 497, 503, 184 A. 13, and in many prior cases there cited, that "where it appears from the will that gifts of income were intended to be gifts to individuals as such, and not as a class, the share of an individual dying before the time for principal distribution will pass to his personal representatives, unless specifically restricted to a life interest," or, as here, to a stated term of years.

It is obvious that the testator did not express his intent clearly. In interpreting wills, as in interpreting ambiguous language of statutes, a construction which will lead to an unreasonable result should be avoided. It has been said in reference to the interpretation of a statute: "If the language employed admits of two constructions, and according to one of them the enactment would be absurd if not mischievous, while according to the other it will be reasonable and wholesome, the construction which will lead to an absurd result should be avoided" (citing cases): 25 R. C. L., sec. 257, page 1019. It is also a canon in construing ambiguous legislation that a construction should be avoided which works a hardship or injury.

Appellant's argument is that since the third paragraph of the will deals only with income and the first sentence of the fourth paragraph refers specifically to principal, the second sentence of the latter paragraph must logically be held to refer likewise to principal alone, citing *Fisher v. Wister*, 154 Pa. 65, 69, 25 A. 1009, where a similar inference was drawn. Yet such a con-

struction would result in an inequitable distribution among the objects of testator's bounty. These objects were sisters, nieces and nephews, all of whom were interrelated. If some of the legatees died, others would be next of kin of the decedents, just as in this instance appellant is next of kin of his deceased mother and sister. The testator carefully provided for the proportions in which both income and principal should be distributed to the legatees, and this was the same in each case. If appellant's contention were adopted, he would receive a very much larger share of the income—in fact six times as much—for the balance of the fifteen-year period than the share of both principal and income specifically bequeathed him. And the same result might occur, under this interpretation, if other income legatees die during the period of the trust. At the termination of the trust the entire principal is to be distributed to the income legatees "in life and being" at that time and the shares of principal from which deceased legatees receive income during their lives, fall into the general fund for distribution to the survivors, by virtue of the first sentence of the fourth paragraph of the will. It is reasonable to infer that the testator did not desire to benefit any income legatee *during the continuance of the trust* in a proportion in excess of what such legatee would take of the principal at its termination.

Moreover, if the second sentence refers only to distribution of principal in the case of "one so dying" before the fifteen-year period terminates, then the inclusion of this sentence has no clarifying effect on the first sentence and must be deemed superfluous, for in the first sentence the testator had already said that principal should go only to those "in life and being" at the termination of the trust. A construction which gives effect to all parts of the will and rejects no language as surplusage is to be preferred: *French's Est.*, 301 Pa. 223, 151 A. 809; *Sarver's Est.*, 324 Pa. 349, 188 A. 141; *Morris's Account*, 298 Pa. 540, 148 A. 843; *Bingaman's Est.*, 281

Pa. 497, 127 A. 73; *Brennan's Est.*, 324 Pa. 410, 188 A. 160; *Duffy's Est.*, 313 Pa. 101, 169 A. 142. In both sentences testator has left in some obscurity the division into shares, whether of principal or income, in case of the death of a named legatee prior to the end of fifteen years. The phrase used in each sentence is merely "in the same proportion as the income is directed to be paid to them." Hence the second sentence, if intended to refer only to shares of principal and added merely as a clarifying clause, gives no aid whatever to the first sentence in this respect. But we think it sufficiently clear that by using this phrase it was intended that a surviving legatee should receive so much of a deceased legatee's interest as is represented by the ratio of his number of sixteenths to those of any other legatee, considering sixteenths as units and not as fractions. A contrary construction would result in a clear intestacy, to be avoided in all possible cases: *Duffy's Est.*, supra; *Fisher's Est.*, 302 Pa. 516, 153 A. 736.

Appellant contends that "if the words 'the share of the one so dying' meant share of *income*, then the effect of the sentence would be practically ridiculous. It would amount to saying: The share of *income* is to be divided and paid over in the same proportion as the *income* is directed to be divided and paid over." The answer to that argument is twofold: (1) It is even more "ridiculous" to adopt an interpretation which makes the second half of paragraph 4 *totally useless*. The testator having already clearly directed how the principal should be divided at the end of 15 years after his death, did a "ridiculous" thing in repeating the same direction and in language less clear. (2) If the second half of paragraph 4 is interpreted as *appellee* contends it should be, the direction is not ridiculous; the phrasing is merely clumsy. What testator was trying to say was: Should any of my sisters, nieces or nephews die before the time for distribution of the principal as aforesaid, that is, within a period of fifteen years after my death, then the

share of the income of the one so dying is to be divided and paid over to and among the survivors in the same proportions *I have already specified* in the preceding paragraph 3. Since proportion means "the relation of one portion to another," testator obviously meant that if, for example, his sister Jennie died before the end of the fifteen-year period specified, her ¹⁄₁₆th share of the income would no longer be paid out as a ¹⁄₁₆th share to anybody but that the unit of distribution among the survivors would then be "fifteenths" instead of "sixteenths," and sister Pauline would receive four of these "fifteenths" and sister Clara two of these "fifteenths" then making the proportions of Clara's share in respect to Pauline's share the same as it was before sister Jennie died. When testator used the phrase, "in the same proportion as the income is directed to be paid to them," he obviously meant what we have indicated above. President Judge Trimble of the court below aptly asks: "What share can there be of the one so dying before the time for distribution of the principal *except the share of the income?*" (Italics supplied.)

The construction we adopt is, therefore, that the second sentence in the fourth paragraph of the will was a gift over to the surviving legatees of *the share of income* of any legatee who predeceased the testator or died prior to the termination of the period of the trust.

One of the appellees in this case is the guardian ad litem, who was appointed by the Orphans' Court to represent a minor, Ruth Van Kirk. The latter's interest in the litigation is one thirty-third of the income. The amount in dispute at the present time is $5,236.55. The minor's share thereof is but $158.65 and the balance of $5,077.87 will be divided among seven other beneficiaries, besides the appellant. The other beneficiaries as well as the minor will also receive additional income during the fifteen-year period the trust is in existence.

The other beneficiaries permitted the burden of defending the decree made by the court below to rest upon

the guardian ad litem. In affirming this decree, the record is remitted to the court below with directions that it charge against the distributable share of the benefited income legatees the costs incurred and make such an allowance for additional fees to the guardian ad litem as is commensurate with the services rendered to the seven other benefited income legatees as well as to the guardian's ward.

Subject to this order as to costs, the decree is affirmed.