## Kisterbock Estate

Before Sinkler, P. J., Klein, Bolger, Hunter and Boland, JJ.

The facts appear from the following excerpts from the adjudication of

BOLGER, J.—. . . This is the first account filed by the trustee, and it consists of the award to it by adjudication of its account as executor which was confirmed absolutely on January 2, 1926, and schedule of distribution thereon approved January 15, 1926. The guardian and trustee ad litem and counsel for a number of the remaindermen seek to surcharge the accountant for certain losses reflected in the account, occasioned by the retention of stocks which were held by decedent at the

time of his death. The stocks in question are as follows: 1,391 shares Pennsylvania Railroad Co., 500 shares Philadelphia Electric Co., 2 shares Philadelphia, Germantown & Norristown Railroad Co., 100 shares Philadelphia Traction Co., 104 shares West Philadelphia Passenger Railway Co., 48 shares Pullman Co., and 28 shares Philadelphia & Darby Railroad Co.

All of these stocks had been owned by testator many years prior to his death and had been transferred by him to two substantial identical trusts of which the accountant was trustee. These inter vivos trusts were executed on June 17, 1909, and April 24, 1919, respectively. By the terms of both trusts the income was made payable to settlor for his life and the principal fell into his residuary estate upon his death. Of the stocks listed above the Philadelphia, Germantown & Norristown Railway Company stock was sold on June 12, 1939, at a loss of $15.07; the Pullman Company stock was sold on July 7, 1947, at a loss of $1,248 on the basis of the reappraised value (as of December 18, 1925) in the schedule of distribution, but at a gain of $504 on the basis of the value as of decedent's death (April 3, 1925). The other stocks mentioned, or securities received in exchange for them, are still held in the account. If the accountant were surcharged for the full amount of actual and potential loss shown by reason of its retention of these stocks, according to the report of the guardian and trustee ad litem, it would involve a replacement in the principal account of $69,976.59.

As I understand it, the exceptions are predicated upon the theory that the discretionary power of retention and investment conferred by the will did not authorize the retention by the accountant of the stocks owned by decedent. Exceptants concede that the accountant acted with common skill, care and prudence in the management of the trust, and they do not seek

to surcharge if the will is interpreted to authorize the retention of the stocks in question. Accordingly, the question involves only an interpretation of the investment power contained in the will. The only paragraph of the will which is of any assistance in determining testator's intention with regard to the investment powers of the trustee reads as follows:

"IN TRUST, to keep invested such moneys as may be invested in *good interest bearing securities* at the time of my decease and to invest and reinvest such moneys as may from time to time come into the hands of my said trustees in other *good interest bearing securities* with power to alter and change such investments from time to time whenever they may deem the same prudent *without being required to invest said moneys in what are termed 'legal investments'* and to collect and receive all of the rents, interest, *dividends* and income therefrom and after deducting all necessary costs, charges and expenses incident to the management of my estate to pay over the entire net interest and income derived therefrom unto my dear wife, Elenora Slaymaker Kisterbock, in quarterly or half-yearly payments for and during the full term of her natural life." (Italics added.)

However, we may get some insight into testator's real intention with respect to the investment powers of his trustee by considering the phraseology of his two inter vivos deeds of trust, one dated June 17, 1909, and the other dated April 24, 1919, in both of which he named the present accountant as trustee and in which the securities presently in question were transferred. I understand that these two deeds of trust are to be considered as evidence in the case at hand, and photostatic copies of them are attached to a stipulation which has been filed of record and which is annexed hereto. In the earlier deed of trust settlor provided as follows:

"IN TRUST, to invest, keep invested and reinvest the same in *good interest bearing securities (and with the consent and approval of the said Josiah Kisterbock, Jr., in other than legal securities)*, and to collect and receive the *dividends, interest and income* of the said trust estate and after paying all charges thereon and the necessary and proper expenses of this trust . . . to pay over the net income therefrom . . . to the said Josiah Kisterbock, Jr., for and during the full term of his natural life." (Italics supplied.)

In the later deed we find the following:

"IV. The party of the first part hereby authorizes and empowers the Trustee herein, party of the second part, with full power and authority at any time during the existence of this trust, to sell and dispose of either or any of the securities or mortgages hereby transferred as well as such as may hereafter at any time become part of this trust estate, for such price or prices as it in its discretion may deem advisable, and to receive the proceeds therefrom, *and invest and re-invest the same in other good interest-bearing or dividend paying securities. . . .*" (Italics supplied.)

In granting investment powers to his trustee both under the deeds and under the will, testator was rather inconsistent to say the least. In the deeds he restricted the trustee to "good interest-bearing securities" except that with his consent and approval nonlegals might be included. But later, in the same instruments, he apparently authorized the trustee to sell and dispose of securities and to invest and reinvest the proceeds in "dividend paying securities" and said nothing about the necessity of securing his approval and consent before so doing. Under the will, in dealing with the same trustee and the same securities, he apparently authorized retention of and investment in only "good interest-bearing securities", but then went on to say in the same sentence that the trustee should have power to alter and change such investments from time to time

as it might deem prudent "without being required to invest said moneys in what are termed 'legal investments' and to collect and receive all of the rents, interest, *dividends* and income therefrom. . . ." It is as if he had said: "During my lifetime, I order my trustee to invest only in good interest-bearing securities, unless I consent to or approve investments in non-legals, and upon my death, I order my trustee to sell all nonlegals then held and I authorize investment of the proceeds of such sales in securities other than legal investments." In other words, in order to show that the trustee had a duty to sell testator's nonlegal investments immediately after his death, it would be necessary to establish the absurd proposition that the trustee had a duty to sell that which it was specifically authorized to buy. It is inconceivable that testator would require his trustee to convert all nonlegal investments after his death and at the same time authorize reinvestment in nonlegals. I decline to believe that he had any such inconsistent purpose in mind and for this reason, among others which will be mentioned, it must be concluded that the trustee had power to retain nonlegal investments after testator's death and therefore may not now be surcharged, except for lack of prudence, which has not been shown.

If the phrase "interest-bearing" had been omitted from the will, it is clear that the retention of an investment in stocks would have been permissible: McGraw's Estate, 337 Pa. 93; Wood's Estate, 130 Pa. Superior Ct. 397. This would also be the result had testator used the phrase "income-bearing" instead of "interest-bearing". In the last analysis, the question is, therefore, an extremely narrow one: Did testator use the phrase "interest-bearing" in its technical sense of income from an obligation such as a bond or a mortgage, or in its broad sense denoting income-producing generally? I am of the opinion that he intended the phrase to be interpreted in its broad or colloquial sense.

In each trust for the nephew and nieces the trustee was directed to collect "the interest and income" and to pay over "the net interest and income" to the respective beneficiaries entitled thereto. After the deaths of the nephew and nieces, the trustee was to pay "the net income" to various grandnephews and grandnieces for their lives with remainder to their issue. These provisions are inconsistent with the interpretation of "interest-bearing" in its narrow sense. If the trustee was to retain and invest in only securities which bore interest, it could collect only "interest", since that is the only return investments of that type produce. There would be nothing from which it could collect "rents . . . dividends and income", as directed in the will. This thought that the testator used "interest-bearing" in the sense of "income-bearing" finds strong support in the recent decision of the Supreme Court in Gillingham Estate, 353 Pa. 493, which case is almost precisely in point. See also Jones' Estate, 344 Pa. 100.

To construe the term "interest-bearing" in its technical sense, would be to render the direction to collect the "rents . . . dividends and income" as well as the direction to distribute "net . . . income" to the life tenants idle and nugatory. Such an interpretation would violate the well established canon of will construction that, if possible, every word must be given meaning and effect: Hannach's Estate, 332 Pa. 145; and Brennan's Estate, 324 Pa. 410. A construction which gives "interest-bearing" a meaning equivalent to "income-bearing" renders every word of the will fully operative and therefore carries out the true intention of testator.

Another circumstance which demonstrates that testator intended his trustee to have a discretionary power to retain stocks is that he conferred upon the trustee power to retain real estate which he might acquire after he executed his Will. Paragraph IX of the will

confers upon the trust a discretionary power to sell "any part of my real estate that may come into its hands". Such a power implies authority to retain in the discretion of the trustee: Conrad's Estate, 32 D. & C. 677. The only real estate owned by decedent was a property at 401 South 47th Street, Philadelphia, which was devised absolutely to the widow. We have a situation, therefore, where testator, owning no real estate to be affected by such a power, confers upon the trustee a discretionary power to retain such real estate as he might acquire before his death. It seems extremely improbable that he would authorize the retention of unknown real estate he might acquire in the future and yet not authorize retention of the seasoned and highly regarded stocks which he had owned and which had been held in the revocable trusts for his benefit for many years.

For the foregoing reasons, I decline to surcharge the accountant for any part of the actual or potential losses complained of, and I accordingly dismiss the objections to the account which relate to that aspect of the case.
. . .

*George P. Williams, 3rd,* and *George P. Orr,* for exceptants.

*H. Coleman Tily, 3rd,* guardian and trustee ad litem, exceptant.

*William Carson Bodine* and *W. Horace Hepburn, Jr.,* contra.

OPINION SUR EXCEPTIONS TO ADJUDICATION

PER CURIAM, November 17, 1950.—A careful study of this record convinces us that the auditing judge has decided the case correctly and that the exceptions must, therefore, be dismissed. The adjudication is very comprehensive, and analyzes the authorities submitted by both sides.

Gillingham Estate, 353 Pa. 493, is particularly appropriate, and is decisive on the very narrow ques-

tion raised in this case. As Mr. Justice Stearne very aptly stated in the Gillingham case, "The intent of the testator is to be gathered from the *whole* will and not from a few of the clauses in it."

The exceptions are, therefore, dismissed, and the adjudication is confirmed absolutely.