## Draper Estate

*Morris H. Sheer*, for accountant.

KLEIN, P. J., October 31, 1955.—William D. Draper died on January 11, 1955, unmarried and without issue, leaving a will which was admitted to probate on February 8, 1955, when letters of administration c. t. a.

were granted. Proof of advertisement of notice thereof was produced to the Auditing Judge.

The will of the testator is an inartificial, holographic document and provides as follows:

"I is my wish at——my death my property be dived among my niece's & nephew's after expenses. Wish Max Seckenderff to have $500.00 in cash for services rendered also two antiqe clocks

Helen Draper

Robert Draper

Edwin Draper

Edith Draper

Agnes Draper Huston

William D. Draper

Witness ⎰ Domenic Castelluccio ⎱ Chas. N. Famous, Sr.

"I had will drawn up by lawyer wishing Max Seckendorff to look after my estate. He has since got married and has all the furniture he wants to save him lots of trouble will leave him cash $500.00 and let the yonger ones have the trouble."

As recited above, testator directed that his property be divided at his death among his nieces and nephews, after a legacy of $500 and two antique clocks to Max Seckendorff, and then names five such nieces and nephews, viz., Helen Draper, Robert Draper, Edwin Draper, Edith Draper and Agnes Draper Huston. It appears from the statement of proposed distribution that in addition to the nieces and nephews named in the will testator had four other nieces and nephews, Reba M. Brothers, Ida Mae Kelley, Harry D. Draper, Jr., and Marion F. Draper, and two grandnephews, William Sweetman and Albert Sweetman, children of Alice Draper Sweetman, deceased niece.

The statement of proposed distribution suggests that under the terms of the will quoted above, testator

intended to confine the distribution of his residuary estate to the five nieces and nephews named in the will, and notice of the intention of the accountant to suggest this interpretation appears to have been sent to all parties in interest in compliance with Rule 63.1(c).

Although practice in the Orphans' Court is highly informal, its procedures are nevertheless predicated upon full and complete notice to all parties in interest.

Supreme Court Orphans' Court Rule 3, Section 6, provides:

"No account shall be confirmed unless the accountant has given written notice of the filing of the account and the call thereof for audit or confirmation to every unpaid creditor who has given written notice of his claim to the accountant and to every other person of whom the accountant has notice or knowledge who claims an interest in the estate as beneficiary or next of kin."

Experience has demonstrated over the years that mere notice of the filing of the account and of the date of the audit is not sufficient in many cases to apprise the parties in interest of the issues which are to be submitted to the court and which frequently affect the interests of such parties in ways they do not suspect. To correct this situation this court supplemented the aforesaid Supreme Court rule with the following local rule:

"Rule *63.1. *Contents of Notice.* The notice shall set forth

(c) the accountant's interpretation of any dispute, or fairly disputable question, known to or reasonably ascertainable by the accountant, together with a copy of the instrument or material parts thereof containing any provision which forms the basis of the dispute, and a statement that if the person notified does not

agree with the accountant's interpretation, he must appear at the audit in person or by counsel to present his contention, under penalty for failure to appear that the court will assume that he agrees with the accountant's interpretation."

The promulgation of this rule does not, however, mean that the court will, in every case, automatically adopt the interpretation suggested by the accountant. It is the court's duty to see that the testator's lawful wishes and directions are carried out wherever possible. If trusts are created by the will, for instance, or if any of the interested parties are charitable organizations, governmental agencies or residents of foreign countries or foreign states, every precaution should be taken to make certain that the affected parties are fully acquainted with the issues. So also, if any of the parties adversely affected are not sui juris, as in the case of minors or incompetents and are not represented by guardians, it seems clear that the court must arrange proper representation for such persons. And even where the persons under legal disability do have fiduciaries to act for them, a burden rests upon the court to make certain that they carry out their responsibility conscientiously.

If, on the other hand, as in the present case, all of the persons involved in the proceedings are sui juris, the Court cannot be expected to act as counsel for those parties who fail to evidence sufficient interest to appear in person or by counsel to present their views. The Court's only duty to such parties would seem to be to exercise reasonable supervision of the administration and distribution of the estate, so as to prevent a distortion of the testator's reasonably obvious testamentary intentions.

In the present case it is alleged in the statement of proposed distribution that notice of the audit and of

the intention of the accountant to request that distribution be confined to the five named nephews and nieces has been given to Reba M. Brothers, Ida Mae Kelley, and Marion F. Draper, nieces of the decedent; Harry D. Draper, Jr., a nephew, and William and Albert Sweetman, grandnephews, children of Alice Draper Sweetman, a deceased niece. In addition, there is annexed hereto a letter from Clair John Killoran, Esq., of Wilmington, Del., counsel for the aforesaid parties, acknowledging that he has received notice of the audit of this estate. Despite this notice, neither counsel nor any of the parties appeared at the audit.

The Auditing Judge has examined the home-made will in the present case and has concluded that the accountant's interpretation of the testator's language appears to be correct. See Stiles' Estate, 15 D. & C. 363 (1931). In construing a will the testator's intention is to be gathered from the four corners of the instrument: Calder Estate, 343 Pa. 30 (1941); March Estate, 357 Pa. 216 (1947); Walker Estate, 376 Pa. 16 (1954). A construction which gives effect to all parts of the will and rejects no language is to be preferred: Hannach Estate, 332 Pa. 145, 149 (1938). In the present case the listing nomination by the testator of his three nieces and two nephews, who resided near him and who had a close family relationship with him, would be utterly meaningless and would serve no purpose if all of his nieces and nephews were held to be entitled to participate in the distribution of the residue of the estate. The residuary estate will therefore be awarded in the manner suggested in the statement of proposed distribution, viz., to Helen Draper, Robert Draper, Edwin Draper, Edith Draper, and Agnes Draper Huston in equal one-fifth shares.