## Long et al. *v.* Stout, Appellant.

Argued September 29, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*S. W. Bierer,* with him *Wade T. Kline,* for appellant. —If the sale made by the executrix was legal, then the evidence of the plaintiffs avail nothing, and the question of law reserved should have been determined in favor of defendant: Keifer v. Eldred Twp., 110 Pa. 1.

It is clear that testator's wife was the first object of his bounty and that he intended that she should use so much of his personal property as might be necessary to her support during her lifetime: Gold's Est., 133 Pa. 495; Martin's Est., 160 Pa. 32.

A sale to advantage would mean rather to her advantage than to the advantage of the remaindermen, as

in all justice and equity she is the one who should have the first care: Garman v. Potts, 135 Pa. 506; Tibben's Case, 8 Pa. Dist. 236; Tibben's Est., 16 Pa. Superior Ct., 73.

*James Gregg* with him *Curtis H. Gregg,* for appellees. —Testator's widow took only a life estate without power to consume: McCullough's Est., 272 Pa. 509; Hege v. Ickes, 267 Pa. 57; Follweiler's App., 102 Pa. 581; Henninger v. Henninger, 202 Pa. 207; Allen v. Hirlinger, 219 Pa. 56; Schaaf v. Politowski, 276 Pa. 31.

Defendant, with notice of former construction of will, is concluded: Diamond v. Lawrence Co., 37 Pa. 353, 356; Green v. Rick, 121 Pa. 130; Hillside Coal & Iron Co. v. Heermans, 191 Pa. 116; Hersey v. Turbett, 27 Pa. 418; Shaffer v. Coal Co., 246 Pa. 550.

The widow, being a trustee, improperly executed the power of sale: Schaaf v. Politowski, 276 Pa. 31; Garman v. Potts, 135 Pa. 506.

OPINION BY MR. JUSTICE MAXEY, November 23, 1931:

This case involves the right of a life tenant to convey property under a power conferred by will.

James Thompson died January 29, 1907, seized of a certain tract of land containing 30 acres situated in East Huntingdon Township, Westmoreland County, which was used as a farm. This farm contained also a vein of unmined coal called the "Upper Freeport." Thompson bequeathed and devised his entire estate by a provision in his will, which reads: "First, I give and bequeath to my beloved wife Eliza all my estate, real, personal and mixed of every kind wheresoever the same may be found, to be hers during her natural life time to enjoy the same and after her death I then direct that the same go to Mrs. Anne Long, James F. Funk and Katie Miller the children of Christ S. Funk to be divided equally share and share alike if my wife Eliza thinks that there is any of my personal property

that may be of no use to her she has full right to make sale and sell the same and I further direct that should my real estate become of such value that it would be an advantage to sell she has the right under this will to make complete title for the same and now I do nominate and appoint my friend Jno. C. Stiner to be my executor of this my last will and testament to act in conjunction with my wife during her lifetime and after her death to carry out the full intent of this my will."

His wife survived him. The entire estate consisted of a farm and the personal property on it. Her sole source of income was from this property. By deed dated July 26, 1920, Mrs. Thompson conveyed the farm to W. S. Welsh and C. K. Fox for $1,000 in cash and a purchase-money mortgage for $2,000. These grantees and their respective wives conveyed this property on February 2, 1922, to Cyrus C. Stout, the defendant below and present appellant, for $3,100. On June 14, 1925, the widow died. On December 19, 1926, Anna Long, James F. Funk and Katie Miller, the remaindermen under the will, brought an action in ejectment against Stout to recover the farm. The court tried the case on the theory that Mrs. Thompson had the power to sell this farm only if, at the time she sold, it was of advantage to the estate to sell it and that whether or not it was of advantage to sell was a question of fact and the determination of this question of fact did not rest with the widow. The court said on this point in its charge: "There would be no right under this will to sell, if that property remained the same, as long as it remained of the same value......It must be a benefit to the estate to sell it. So that is the issue and the only issue in this case as we understand it." The court then submitted to the jury the determination of the question whether "it was of advantage for the estate to sell." The evidence submitted to the jury consisted of valuations of the farm by witnesses called by the respective parties. Plaintiff's witnesses valued

the farm at the time of its sale at from $4,500 to $6,000. Defendant's witnesses valued it at from $1,500 to $2,000. The jury found a verdict for the plaintiff for the premises described in the writ. Defendant's motions for a new trial and for judgment n. o. v. were refused. Judgment was entered on the verdict. Defendant appealed.

We think the court's interpretation of the word "advantage" was too narrow. It may be of advantage to sell a property even when its value in fact has not changed but when the prospects are that it may change for the worse. However, this point is of minor consequence, for the controlling question is, Did the determination of the question of advantage rest with the widow so long as she exercised this power honestly? We hold that it did. "The nature, scope and extent of a power depend upon the provisions of the will when read in the light of the surrounding circumstances, taken as a whole, and construed in accordance with the general rules of construction. This includes powers which are given to a life tenant": Page on Wills, volume 2, (2d edition), section 1161.

"It is not necessary that the power to sell should be expressly given in terms by the will, but it may be implied when it is clear that the testator intended that his executor should have such power," 24 Corpus Juris, page 156, section 637.

Reading the will in the light of the surrounding circumstances and taken as a whole, we think it is clear the testator intended that his widow should have the power to sell the real estate when in her opinion it was "an advantage to sell." It will be observed the testator provided that if his wife thought that there was any of his personal property that might be of use to her, she had "full right to make sale and sell the same." Then without any break in the sentence, not even a comma or semicolon, he said: "and I further direct that should my real estate become of such value that it would be of advantage to sell she has the right under

this will to make complete title for the same." The obvious import of these words considered with the preceding words is that his wife and her support were the chief subject of his solicitude, or "the first object of his bounty," quoting from Gold's Est., 133 Pa. 495. There is nothing in the phrases quoted from the will or in their construction which indicates that the testator intended to give his wife one iota less power to "make sale" of his real property than of his personal property. "A will is not to be construed per parcella but by the entirety": 28 Ruling Case Law, 217. If a man about to go on a long journey would say to another: "I am leaving my automobile with you for your use and enjoyment, but when it becomes of advantage to sell it, you sell it," the clear import of these words would be that the man to whom the car was entrusted would be the sole judge of when it would be of advantage to sell it. Even the adjective "complete" before the word "title," as used in the will, was in fact a rhetorical intensive which the testator used to give force and emphasis to the idea that he wished to clothe his wife with unquestionable power to sell. It is true that she didn't have this power until "it would be an advantage to sell" but this emphasis on his wife's power to sell by the use of the word "complete" indicates that she and her power to sell constituted his dominant testamentary thought in relation to his property.

Our ruling in this case is consistent with the ruling of this court in Penna. Co. v. Leggate, 166 Pa. 147. In that case a testator directed that the whole of his residuary estate, real and personal, should be converted into money "as soon as practicable." It also directed that certain unproductive real estate should be converted by his trustee and executors, into money "as soon as may be for the best interest" of his estate. It was held that the judgment of the executors as to the time of sale was controlling and that they had power to convey a title in fee simple to the lands in question.

There is no substantial difference between giving an executor power to sell real estate when "it would be an advantage to sell" and giving the power when it "would be practicable" or "for the best interest of the estate" to sell. Power to determine when it would be advantageous or practicable to sell must be lodged somewhere and it is, in such wills as these, lodged by clear implication in the person to whom the power to sell is entrusted. If an officer were given orders to move his troops whenever it was advantageous or practicable to do so, his obvious interpretation of the orders would be that he was to move the troops when *in his judgment* it was advantageous or practicable to do so. "In construing a will the rule requires that it be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator, as extracted from the whole will, should follow from so reading it. Words and limitations may be supplied or rejected when warranted by the immediate context or the general scheme of the will." Bender v. Bender, 226 Pa. 607, 613.

All that the other parties in interest in this case were entitled to was that the widow should exercise the power of sale honestly and in good faith. There was no actual or constructive fraud in this case. A mere error of judgment on the part of the widow would not have made the sale voidable in an action of ejectment, though if substantial it would warrant a court of equity in restraining the sale at the instance of remaindermen who acted with diligence. But we do not believe that under the evidence there was even an error of judgment on the widow's part. The price for which the thirty acres were sold was about the average of the various estimates of the several witnesses called by the respective parties.

In Offutt et al. v. Hall's Executor et al., 87 S. W., 783, the Supreme Court of Kentucky held that when a

will gave an executor power to sell real estate in case this real estate could not be divided in kind, the executor was impliedly clothed with power to determine whether or not the property could be divided in kind. "It seems to us," said the court, "that, in the absence of language refuting the idea, the testator intended to vest complete discretion in that matter in his executor —that the greater included the lesser power."

If the testator had intended that the widow should have power to sell the property only with the consent of the remaindermen it is reasonable to believe that he would have said so. If the remaindermen believed that the executor was acting in bad faith in selling the property for the price stated, they should have gone into equity promptly to restrain the sale as they did in 1917 when the widow attempted to enter into an agreement with one Watt and one Sarver giving them the option to purchase and mine the Upper Freeport vein of coal on the tract in question for $50 an acre. The remaindermen then filed a bill alleging that "the transfer and alienation of that vein of coal together with the mining rights and right-of-way would work an irremediable and gross injustice" to them and asked the court to enjoin the action on the widow's part. The court did so.

However, we cannot accept the appellee's contention that the action and decision of the court in that case makes the question in this case res judicata. In the bill of complaint in that case the issue was, quoting with slight paraphrase from the sixth paragraph of the plaintiff's bill: "Did the testator intend by the devise to permit his widow to alienate a portion of the real estate to the detriment and injury of the remaining part thereof and render the same valueless?" In that case the court said: "Proof was offered by the plaintiff that the sale of the coal separate and apart from the surface would be a distinct disadvantage." The court also held that under the terms of the will

the widow "had no right to separate the surface from the coal." The court also found as a fact, inter alia, that "The amount for which the defendant [the widow] agreed to sell the real estate was wholly inadequate and far below the market value of coal in that neighborhood." This was all the court needed to find to determine the question at issue in that case, for under this finding the widow's action would have amounted to a constructive fraud against the remaindermen and would have been enjoinable as such for it would have been her duty to obtain the highest price obtainable for the land. It was not necessary to the decision of the issue in that case for the court to conclude as a matter of law that the widow was without authority under the will to make title to the real estate. The test of the identity of causes of action for the purpose of determining the question of res judicata is the identity of the facts essential to their maintenance. The facts essential to the maintenance of plaintiff's bill in the equity case were not the same facts that are essential to the maintenance of plaintiff's cause of action in the ejectment case now before us for review. Nowhere in plaintiff's bill in the equity case do we find an explicit denial of the widow's testamentary power to sell the testator's land. The only denial of power we find there is the denial of power "to alienate a portion of the real estate to the detriment and injury of the remaining part." Therefore the decision in the equity case is not a determination of the issues in this case.

In view of our conclusion that the widow had the right to sell this property, we can only add that the consideration she received for this property was substituted for the land. She had only a life tenancy in this property for her support and maintenance, and what remained at her death passed to Anna Long and the other two beneficiaries named in the will. This is in accordance with the court's ruling in the case of Henninger v. Henninger, 202 Pa. 207, 209. In that

case the lower court said: "There is no repugnance whatever between a devise for a life term, and a super-added power of sale. Both may operate, and when the power is executed, it is, where as in this case it is not otherwise ordered, simply a substitution of one kind of property for another; the estate of those interested remaining the same in the thing substituted. Here the money is substituted for the land, and Mrs. Henninger will stand, with respect to it, just as she did towards the real estate; it will be hers for life, to use it for her support and maintenance, and what remains at her death will pass to Mrs. Bishop and her heirs." In a per curiam opinion this court held that, "The learned judge of the court below was clearly right in holding that, by the terms of Jacob Coover's will, the proposed conveyance of Elizabeth Henninger was not the assertion of title in her, but the exercise of a full power conferred upon her by the will."

The judgment of the court below is reversed and judgment is entered for the defendant non obstante veredicto upon the whole record.