## Siple et ux., Appellants, *v.* Greumelli et al.

Argued May 28, 1947. Before Maxey, C. J., Drew, Linn, Stern, Patterson and Stearne, JJ.

*Randolph C. Ryder,* with him *William C. Storb* and *Daniel B. Strickler,* for appellants.

*Merrill L. Hassel,* with him *W. Hensel Brown* and *Samuel S. Wenger,* for appellees.

Opinion by Mr. Justice Linn, June 30, 1947:

Plaintiffs appeal from a decree refusing relief in an action quia timet. The decision depends on the true construction of the will of Zachariah Oatman. The plaintiffs claim title in fee to a farm in Eden Township, Lancaster County, for convenience called Eden farm.

This farm was conveyed in fee by George Oatman to his brother, Zachariah Oatman, by deed dated June 27, 1848, duly recorded. Zachariah, the grantee, allowed George, the grantor, to remain in possession.

Zachariah lived on a farm (to be called the Home farm) in an adjoining township. His will provided: "As to such estate as it hath pleased God to intrust me with I dispose of the same as follows—Viz: I give and bequeath to my daughter and only child, in manner and form following. The personal property, and all other Real Estate I may have at the time of my death, except the farm I now live on, shall be sold, and the proceeds after paying my just debts and funeral expenses, invested in this farm, so reserved and after the death of my daughter, then the farm to be sold, and equally divided (the proceeds) among her children. My said daughter, Elizabeth McMinn, to have the privilege of living on the farm so long as they take good care of the farm, but should they neglect to properly care for the farm then I direct my executor hereinafter named or his successor, to place the farm in the hands of some one who will properly care for it, and after paying all expenses incident to said farm then to pay the proceeds of same over to my said daughter during her lifetime. Any of the real estate I may have at the time of my death, my executor is authorized to make title therefor the same as I could or would do if personally present. The estate which I leave to be considered as being in Trust for my said daughter, Elizabeth McMinn, during her lifetime."

The words "all other Real Estate I may have at the time of my death" included the Eden farm because the only other real estate he had was "the farm I now live on," the Home farm.

Testator died in 1901, insolvent, whereupon the Home farm was sold on the order of the Orphans' Court on November 30, 1901, to pay debts. At the time of the sale, the farm was encumbered by two mortgages aggregating $3,000.* The creditors received 7.616% of their claims at the audit of the executor's account. For some

---

* The farm brought $1.00 at the sale subject to the mortgages. Testator's debts were scheduled at $3,465.93; his personalty was ap-

unexplained reason the executor did not bring the Eden farm into the administration, although testator had directed that it be sold and the net proceeds invested in the Home farm. He had also provided that after the death of his daughter, Mrs. McMinn, the Home farm, augmented by the investment of the net proceeds of the sale of the Eden farm, should be sold and the proceeds divided equally among her children.

About 1913, testator's daughter, Mrs. McMinn, brought ejectment against Richard Cummings and wife, who were in possession of the Eden farm as heirs of George Oatman (grantor to testator in 1848). They defended on adverse possession. At the trial it was held that they had not overcome the presumption that George, the grantor, had remained in possession on behalf of the grantee, Zachariah, and that the defense of adverse possession by defendants claiming as heirs of George, was not made out. Judgment was entered for the plaintiff, Mrs. McMinn: see *McMinn v. Cummings*, 56 Pa. Superior Ct. 77 (1914). Her children were not parties to the suit.

In 1926, Elizabeth McMinn and her husband, presumably in possession pursuant to the judgment in ejectment, mortgaged the Eden farm to secure a loan of $1,000. They defaulted and the mortgage was foreclosed by sheriff's sale August 13, 1943, to Giovini Greumelli, now a defendant, who took title from the sheriff by deed duly recorded. Later in August, 1943, the defendant, Greumelli, mortgaged the farm to Solomon and Mary Kachel, also defendants, to secure a loan of $2,600.

The death of Mrs. McMinn on October 1, 1943, terminated such life estate as she had under the will of Zachariah Oatman. Her children, claiming in remainder, conveyed the Eden farm to Ada F. Redman, who then conveyed it to the plaintiffs by deed acknowledged May 31, 1944, and recorded. By this suit, they desire

praised at $523.47. After payment of administration and funeral expenses, there remained for distribution among creditors $257.54.

removed from their title under the will of Zachariah Oatman, the cloud represented by the deed to defendant Greumelli and the mortgage to the Kachel defendants.

At the sheriff's sale on the foreclosure of the McMinn mortgage, the quantum of the estate to be sold and acquired was informally raised by a bystander, the deputy sheriff conducting the sale replied that the interest of the mortgagor was being sold; another bystander is said to have replied that a "clear title" would be obtained.

The learned court from which the appeal comes, refused plaintiffs' prayer for relief, stating that as "The Eden property is not specifically mentioned in the will and is not included among the assets of the estate of Zachariah Oatman, deceased" at the time his estate was settled in the Orphans' Court, decedent died intestate as to the Eden farm. The learned judge also said: "The conclusion that Zachariah Oatman died intestate as to the Eden property is justified under the will and the unusual circumstances of this case. If so, then the Eden property descended to Elizabeth McMinn as the only child and heir of Zachariah Oatman, deceased." It is of course true that if she took under the intestate law, instead of by her father's will, her title in fee passed by the foreclosure sale to defendant, Greumelli, and plaintiffs would have no right to a decree. The learned court was also of opinion that "the circumstances indicated a lack of diligence" on the part of plaintiffs in proceeding against the defendants and for that reason relief must be denied.

We cannot approve the construction of the will adopted by the learned court below. All testator's words must, if possible, be given effect: *Calder's Estate*, 343 Pa. 30, 21 A. 2d 907; *Hannach's Estate*, 332 Pa. 145, 2 A. 2d 711; *Blair v. Shannon*, 349 Pa. 550, 37 A. 2d 563. Doubts are resolved against intestacy: *Goodin's Estate*, 328 Pa. 548, 196 A. 1; *Duffy's Estate*, 313 Pa. 101, 169 A. 142. We agree, of course, that the construction

of a will, in the light of the circumstances in which it was executed, may require a court to hold that a testator has not disposed of all his property and that what was not so disposed of must pass under the intestate law: cf. *Reed's Estate,* 237 Pa. 125, 85 A. 138; *McGlathery's Estate,* 311 Pa. 351, 166 A. 886; *Knox's Estate (No. 2),* 328 Pa. 188, 191, 195 A. 34. But testator owned only two farms, the Eden and the Home farm, and dealt with both of them in his will. The comprehensive phraseology "and all other Real Estate I may have at the time of my death" can refer to nothing except the Eden farm because, in the same sentence, he also deals with the "farm I now live on," the Home farm. While he directed a conversion for purposes of distribution, the Eden farm was not sold. He specified his daughter's interest by repeating that "The estate, which I leave, to be considered as being in Trust for my said daughter, Elizabeth Mc-Minn, during her lifetime." The judgment in the ejectment action against defendants who were keeping her out of possession, did not increase her estate; it entitled her to possession only of what she received by the will of her father. The rights of her children have not been lost by the executor's failure to bring the Eden farm into the administration. Although their interests were vested, they were not entitled to possession until their mother's death which occurred October, 1943. At that time the defendant, Giovini Greumelli, had taken title from the sheriff and the defendants Kachel had received their mortgage. The record was notice to the defendants; the life tenant's children did nothing to mislead defendants; there was no lack of diligence on the part of the children. The executor's failure to comply with the testamentary direction to sell the Eden farm and invest the proceeds in the Home farm did not take from the beneficiaries what the testator gave them.

The decree is reversed and the record is remitted with instructions to enter a decree as prayed for. Each side shall pay its own costs.