## Walker Estate.

Argued October 9, 1953. Before STERN, C. J. STEARNE, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

18

*J. Garfield Houston,* with him *J. Henry O'Neill, Park J. Alexander, Thomas Watson* and *Robert L. Kirkpatrick,* for appellants.

*William H. Eckert,* with him *James E. MacCloskey, Jr.* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellant.

*Elder W. Marshall,* with him *Edmund K. Trent, William A. Seifert* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 4, 1954:

These appeals require a construction of the will of John Walker, deceased, with particular reference to a phrase in the tenth item. That item makes provision for testator's son, Henry. The phrase reads: "if he survives my wife and me". Upon the audit of the trustees' account the auditing judge ruled that the phrase had reference only to the son's *life estate* and all other dispositions in the item were effective, *even though the son did not survive testator's widow, the son's stepmother.* The court in banc overruled the auditing judge and decided that the phrase made the bequest to the son *conditioned* upon his surviving testator's widow, and since the son did not so survive, an intestacy resulted as to this share. The executor and trustee under the son's will and certain of the son's appointees under his power of appointment have appealed.

In construing a will it is the court's first duty to examine the will and, if possible, ascertain its meaning without reference to canons of construction: *Mulliken v. Earnshaw,* 209 Pa. 226, 58 A. 286; *Groninger's Estate,* 268 Pa. 184, 187, 110 A. 465; *Weir's Estate,* 307 Pa. 461, 467, 161 A. 730.

It is apparent that this will and its codicil were professionally drawn. The provisions in the first seven items of the will and those in the codicil are not involved in this construction. By the eighth item the residue of testator's estate was placed in trust to pay his widow, Susan C. Walker, the entire net income for her life: "And upon the further trust, upon my death, to divide the whole of the said trust property (subject, however, to the life estate hereinbefore given to my wife) *into the same number of equal shares as the number of my children who survive me or who are dead, leaving issue surviving me, and to set aside or allocate one equal share for each of my said children.* My Trustees, however, may hold, and manage the said property as a whole and merely set aside an undivided portion thereof for my children until there is an actual allotment or distribution of the corpus of my estate, as hereinafter set forth." (Emphasis supplied)

By item nine an equal one fourth share is bequeathed to testator's daughter, Margaret, "upon the death of [his] wife, *provided Margaret is then living*". (Italics supplied)

By the tenth item provision is made for his son, Henry, in the following language: "And upon the further trust, with respect to the share set apart for my son, Henry P. Walker, *if he survives my wife and me,* to continue to hold the said share for and during the term of his life, with the powers and authority hereinbefore given, and to pay the net income therefrom to my son, Henry, in quarter-yearly installments, for and during his lifetime; *and upon the death of my son, Henry, if he should leave a child or children, or more remote issue, surviving him, my Trustees shall pay over and distribute the said share so set apart for my son, Henry, to and among the child or children, or*

*more remote issue, of my son, Henry; the issue of any deceased child of my son, Henry, to take the share that his or her parent would have taken.* . . . If my son, Henry, should die without leaving a child or children, or more remote issue, surviving him, then I direct my Trustees to pay over and distribute Henry's share to and among such of my lineal descendants and/or such educational and/or charitable institutions as my son, Henry, may by his last will and testament, direct, limit and appoint, and I hereby authorize and empower him so to do; and if Henry should die without leaving a child or children, or more remote issue, surviving him and without exercising the power of appointment herein given him, then my Trustees shall add the said share so set apart for my son, Henry, unto the shares of my other children and the issue of deceased children, in the same manner as if the said share had been originally a part of the shares set aside for my said other children and issue of deceased children." (Emphasis supplied)

By the eleventh item, one of the equal one fourth shares was bequeathed to the trustees for the life of a grandson, John Walker, a child of testator's predeceased son, Hay Walker. The remaining equal one fourth share was bequeathed to the trustees for the lives of his grandsons, Daniel H. Wallace and Frank Ward Severance, children of testator's predeceased daughter, Florence Walker Severance (formerly Florence Walker Wallace).

In this item provision is made for the substitution of children of the daughter, Margaret, should she "not survive my wife or [testator]". This is a qualification of item nine which made a conditional gift to the daughter.

It was further provided that upon the decease of each grandchild, as above, such share or shares should

pass to his respective child or children who reach twenty-one years of age. In default of such children then such grandchild of testator could appoint by will to testator's lineal descendants or charitable institutions and upon failure to so appoint then such share or shares should be paid to testator's other children or issue.

Item twelve made all bequests subject to spendthrift provisions; item thirteen authorized distribution in kind and made directions concerning disposition of stock dividends; item fourteen declared that the provision for his widow should be in lieu of dower.

By item fifteen testator directed that the corpus of the share set aside for the children of the daughter, Florence Walker Severance, should have deducted therefrom $25,000, being testator's estimated value of the gift of a home which he had deeded to her. It is stated that testator made this provision "... *in order to adjust the division of my estate among my children, ...*" (Italics supplied) The remaining items, sixteen, seventeen and eighteen, need not be recited as they are not involved in this construction.

The single issue is whether or not the share of the son, Henry, is conditioned upon his surviving testator's widow.

In expounding a will it is not what testator meant, but the meaning of his words: *Rosengarten Estate,* 349 Pa. 32, 36 A. 2d 310; *Myers Estate,* 351 Pa. 472, 41 A. 2d 570. The *words* of the tenth clause are: "And upon the further trust, with respect to the share set apart for my son, Henry P. Walker, if he survives my wife and me, to continue to hold the said share for and during the term of his life, with the powers and authority hereinbefore given, and to pay the net income therefrom to my son, Henry, in quarter-yearly installments, for and during his lifetime; ..." Then followed dis-

positions, *after* Henry's death, to Henry's children and issue, and upon failure of such issue, Henry was given the power to appoint. But under the facts of this case it is highly significant that this clause, relating to IN-COME, *is set off from the rest of the sentence by a semicolon.* Following the semicolon was a distinct break in thought. The dispositive words preceding such punctuation mark related to *income* while those which followed concerned *principal.* This Court in *Orlosky v. Haskell,* 304 Pa. 57, 155 A. 112, said (p. 63) : ". . . A qualifying phrase which appears in a paragraph before a semicolon does not leap over or bridge the semicolon and qualify what follows the semicolon. Provisos ordinarily qualify what precedes not what follows them." It therefore follows that grammatically the words of the phrase preceding the semicolon relate solely to Henry's *life estate* and do not affect testator's disposition of the remainder or corpus of the share. But ordinarily punctuation plays little part in the construction of a will: *O'Malley v. Loftus,* 220 Pa. 424, 69 A. 819; *Biles v. Biles,* 281 Pa. 565, 127 A. 235; *Tarter's Estate,* 291 Pa. 458, 140 A. 502. See also: 57 Am. Jur. 753, Sec. 1155; Vol. 38, Words and Phrases, Perm. Ed. "Semicolon". We are required to consider intent from the whole will, construed from its four corners: *MacMackin Estate,* 356 Pa. 189, 51 A. 2d 689; *March Estate,* 357 Pa. 216, 53 A. 2d 606; *Siple v. Greumelli,* 357 Pa. 237, 53 A. 2d 607; *Mulert Estate,* 360 Pa. 356, 61 A. 2d 841. Regard must be had to the whole scheme, and if it is found that a particular intent is inconsistent with a general intent, the former must give way to the latter: *Ferry's Appeal,* 102 Pa. 207; *Lefebvre v. D'Arcy,* 236 Pa. 235, 84 A. 765; *Shareff's Estate,* 143 Pa. Superior Ct. 465, 17 A. 2d 623. A construction will be avoided which would lead to an unnatural, improbable or absurd result, and which, under all the language in

the will, would constitute a highly improbable testamentary intent: *Mayhew's Estate,* 307 Pa. 84, 160 A. 724; *Conner's Estate (No. 2),* 318 Pa. 150, 178 A. 15; *Hannach's Estate,* 332 Pa. 145, 2 A. 2d 711; *Fahey Estate,* 360 Pa. 497, 61 A. 2d 880.

The single question of will construction before us is: despite the grammatical meaning of testator's *words,* which merely referred to his son's life estate, did testator, nevertheless, intend, should the son die in testator's lifetime, or before testator's widow, that the equal one fourth share of corpus should pass *per stirpes* to the other children or their issue because of the resulting intestacy concerning that share? We do not consider testator so intended. His general testamentary scheme is unmistakable. Testator's first concern was that his surviving wife should have a life estate in the entire residuary estate. Under no circumstance was any child, grandchild or any more remote issue to enjoy a life estate until after the termination of his widow's life estate. It will be noted that the provision for his wife was *in lieu of dower*: *Jackson's Appeal,* 126 Pa. 105, 17 A. 535; *Biddle Estate,* 375 Pa. 189, 100 A. 2d 65.

Upon termination of his widow's life estate it is obvious that testator intended a stirpital distribution of his estate. After giving life estates to his son and grandchildren, it is beyond question but that he contemplated a distribution of the corpus *per stirpes.*

That this was testator's intent, the pole star in every will construction, is manifest when considered in the light of circumstances surrounding him when he made his will. These include the condition of his family, the natural objects of his bounty, and the amount and character of his property: see opinion of Mr. Justice BELL in *Britt Estate,* 369 Pa. 450, 454, 87 A. 2d 243. According to the stipulation of counsel,

when testator wrote his will his wife was seventy-nine years of age and the son. Henry was fifty. Henry died in 1950 at the age of sixty-nine and testator's widow at her decease had attained ninety-eight years of age. Should we accept appellees'. contention that the entire bequest to the son is conditioned and therefore fails because the son did not survive testator's widow, it would result, considering testator's general stirpital testamentary scheme, in an obviously unnatural and absurd disposition: *Bender v. Bender,* 226 Pa. 607, 75 A. 859; *Long v. Stout,* 305 Pa. 310, 157 A. 607. No conceivable reason, either expressed or implied, is shown by the will to indicate that testator intended to make his son's bequest and that of the son's issue and appointees, *dependent upon Henry's survival of testator's widow.* It would have been manifestly unjust had Henry left issue, as they would therefore have been disinherited. As Mr. Justice MUSMANNO said in *Umberger Estate,* 369 Pa. 587, 592, 87 A. 2d 290: "In the interpretation of wills, the law will impute to a testator's words such meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice [citing cases]."

In construing a will a testator is presumed not to have intended to die intestate. There is an equally potent canon of construction that an heir is never to be disinherited except by plain words or necessary implication. Neither presumption, however, will be permitted to defeat the intention of testator *which is expressed in plain words or appears by clear implication*: *Grothe's Estate,* 229 Pa. 186, 78 A. 88; *French's Estate,* 292 Pa. 37, 140 A. 549; *Rouse Estate,* 369 Pa. 568, 87 A. 2d 281; *Loving Estate,* 159 Pa. Superior Ct. 339, 48 A. 2d 39. The above conflicting canons of construction are not applicable in the face of the words of this will expressly indicating testator's intention.

Appellees, in support of their contention, point to the provision for testator's daughter, Margaret, in the ninth item. This item gives the daughter her one fourth equal share *absolutely* "provided [she] is then living". By the eleventh item it is provided that should Margaret *not* survive, *but leave issue,* the trustees were to hold such grandchildren's share of principal and pay them the income *for life.* The item also gave them power of appointment over the principal. It is argued that if testator had not intended Henry's share to be conditioned on his surviving his father and stepmother, testator would have phrased the tenth clause in the same manner as he did in that portion of the eleventh item. But this does not necessarily follow. Henry was only to enjoy a *life estate* after the death of testator's widow. His bequest was unlike his sister Margaret's, which was *absolute.* After the gift of a life estate to Henry, testator provided for *life estates* to Henry's *surviving issue,* if any, and in default to Henry's *appointees.* A testator is not required to make an equal division of his estate. This frequently is the very purpose for making a will. A testator may exclude any one without stating his reason therefor: *Wharton Appeal,* 373 Pa. 360, 96 A. 2d 104. But in this case it clearly appears that there was no exclusion except the son's life estate if he died as indicated.

We agree with the auditing judge that the phrase "if [his son] survives my wife and me", refers only to the son's life estate in an equal one fourth share following the life estate of testator's widow in the whole of the residue. Considering the language of the will as a whole—from its four corners—we construe Henry's share as one for life, if he survives testator's widow (which he did not), and after the decease of both Henry and testator's widow the corpus passes to the son's issue, if any, (of which there were none), and in default

of issue Henry was given a special power of appointment to dispose of such corpus by will (which he did).

The decree of the majority of the orphans' court is reversed, and the definitive decree of distribution of the auditing judge is reinstated. Costs to be paid by the appellees.

Mr. Justice JONES took no part in the consideration or disposition of these appeals.

