278

TRUST OF JOHN WALKER, DECEASED, FIDELITY TRUST COMPANY, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60187. Filed May 14, 1958.

*John G. Kish, Esq.*, for the petitioner.
*Charles A. Boyce, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The Commissioner has determined a deficiency in income tax of petitioner for the year 1953 in the amount of $2,723.44.

Issues presented by the pleadings are the correctness of the respondent's action (1) in determining that an amount of $8,085.59 taken by petitioner as a deduction in its income tax return was not permanently set aside for charities during the taxable year 1953 within the meaning of section 162 (a) of the Internal Revenue Code of 1939 and therefore was not allowable as a deduction, (2) in failing to determine that the foregoing amount of $8,085.59 was distributable to charities during the taxable year 1953, and (3) in determining that the petitioner had taxable net income for the year 1953.

The facts which have been stipulated are so found.

Petitioner, Fidelity Trust Company, Trustee Under the Will of John Walker, Deceased, for the Susan C. Walker Trust, is a Pennsylvania banking corporation and is approved to act as a corporate fiduciary under the laws of the Commonwealth of Pennsylvania, with its principal office at Pittsburgh, Pennsylvania.

The fiduciary income tax return for the calendar year 1953 was filed by petitioner with the collector for the twenty-third district of Pennsylvania at Pittsburgh, Pennsylvania. On the return, petitioner deducted from gross income the amount of $8,085.59 as "⅔ share net income that inures to charity." In the statutory notice of deficiency mailed by respondent to petitioner on October 12, 1955, it was determined by respondent that the deduction was not allowable. This determination resulted in a deficiency in the amount of $2,723.44, all of which is in dispute.

John Walker died June 23, 1932, leaving a last will and testament by which he created a trust estate for and during the life of his wife, Susan C. Walker, and appointed petitioner as trustee. The will provided that the entire net income of the trust estate was payable to decedent's widow, Susan C. Walker, for and during her lifetime and, at her death, a one-fourth share of the trust estate to be held "upon the further trust, with respect to the share set apart for my son, Henry P. Walker, if he survives my wife and me," to pay the

net income of the one-fourth share of the trust estate to Henry P. Walker, for and during his lifetime. By item Tenth of his will, John Walker further provided that in the event the son, Henry P. Walker, died without leaving a child or children or more remote issue surviving him, then—

I direct my Trustees to pay over and distribute Henry's share to and among such of my lineal descendants and/or such educational and/or charitable institutions as my son, Henry, may by his last will and testament, direct, limit and appoint, and I hereby authorize and empower him so to do; * * *

Henry P. Walker survived the death of his father, John Walker, but failed to survive his stepmother, Susan C. Walker, who died December 14, 1950.

The son, Henry P. Walker, by his will, exercised the aforesaid power of appointment by directing that the one-fourth share of the trust estate be held in further trust by James E. MacCloskey, Jr., trustee, to pay the income of the one-fourth share, one-third to Margaret W. Davis, sister of Henry P. Walker, for life, and, during the sister's lifetime, to pay the remaining two-thirds of the income in equal shares to Sewickley Valley Hospital of Sewickley, Pennsylvania; Allegheny General Hospital of Pittsburgh, Pennsylvania; Shadyside Hospital of Pittsburgh, Pennsylvania; and Washington and Jefferson College of Washington, Pennsylvania, all four of the institutions being at all times here pertinent on the published list of the Commissioner of Internal Revenue as exempt charities. Henry P. Walker's will further appointed the same four institutions as the ultimate remaindermen of the one-fourth share upon the death of Margaret W. Davis.

At the audit of the final account of the petitioner trustee under the will of John Walker in the Orphans' Court of Allegheny County, Pennsylvania, the heirs of John Walker appeared and formally presented a claim to the one-fourth share of the trust. This claim was based upon the theory that the exercise of the power of appointment by Henry P. Walker over the one-fourth share was conditioned upon his surviving his stepmother, Susan C. Walker, and, not having so survived, an intestacy resulted as to the one-fourth share and, hence, the share was payable to the heirs of John Walker.

On June 4, 1951, the Orphans' Court decreed distribution of so much of the trust as was not in dispute and suspended from distribution the disputed one-fourth share of the trust by entering the following order: "Balance Corpus suspended pending adjudication of 10th Item of Will (of John Walker): * * * $232,102.86 * * * Balance ¼ Share Income Suspended Pending Adjudication, $3,131.35."

On December 11, 1952, the Orphans' Court of Allegheny County in an opinion by Judge John F. Cox, the auditing judge, construed the will of John Walker as vesting in Henry P. Walker a power of appointment over the one-fourth share of the trust estate and held that Henry P. Walker had validly exercised that power of appointment by establishing the trust in favor of his sister and the charities as aforesaid, and the court entered a definitive decree of distribution accordingly, which decree provided in part:

it is ordered, adjudged and decreed, that the balance of the Corpus suspended, June 4, 1951, pending adjudication of the Tenth Item of Will, be now lifted and the said fund, viz: $235,234.21, be now paid in accordance with the following Schedule of Distribution, unless exceptions are filed within ten days.

The schedule of distribution awarded the balance "To James E. McCloskey [*sic*], Jr., Tr. U/W Henry P. Walker, deceased."

The heirs of John Walker filed timely exceptions to the decree of the court, and, on April 13, 1953, in an opinion by Boyle, P. J., the decision was reversed by the court *en banc*, and an amended decree of distribution of the one-fourth share to the heirs of John Walker was entered accordingly. This decree was appealed to the Supreme Court of Pennsylvania which, in an opinion filed January 4, 1954, in *In re Walker's Estate*, 376 Pa. 16, 101 A. 2d 652, reversed the decree of the Court *en banc* and reinstated the aforesaid decree dated December 11, 1952, of the auditing judge.

The 1953 income accruing from the one-fourth share of the corpus was received by petitioner and was not distributed during the calendar year 1953.

The 1953 income was not distributed until July 20, 1954. On April 30, 1954, petitioner, as trustee under the will of John Walker, filed a "second and final" account in the Orphans' Court, which showed a balance of $8,637.05 for distribution, to account for the amount of $13,302 that had been suspended from distribution by the decree dated June 4, 1915, "for purpose of liquidation." This account came on for audit on June 17, 1954, at which time petitioner filed in the court a petition for distribution. A decree of distribution of the balance of $8,637.05 to James E. MacCloskey, Jr., trustee under Henry's will, was entered on July 13, 1954.

The income of the trust estate for the year 1953, computed before giving effect to the charitable deduction claimed by petitioner in the amount of $8,085.59, amounted to $12,128.38. On its fiduciary income tax return filed for the year 1953, petitioner did not claim a deduction for any amount as payable to Margaret W. Davis, and reported a taxable income of $3,008.61 and paid a tax thereon in the amount of $692.12 on April 21, 1954.

The income of petitioner here in controversy was accumulated during 1953.

During 1953 the distributee of the income here sought to be deducted was unascertained and its interest therein was contingent upon the final decision of the Supreme Court of Pennsylvania.

Petitioner, which is trustee of the trust of Susan Walker established by the will of John Walker, deceased, here seeks to deduct under section 162 (a) of the 1939 Code [1] the income from two-thirds of one-fourth of the corpus of that trust as having been permanently set aside in its hands for ultimate distribution to beneficiaries which are concededly tax-exempt charitable institutions. Respondent has disallowed such a deduction and has determined a deficiency as a result of such disallowance. Clearly, so far as this petitioner is concerned, respondent's action was not in error.

In spite of a long-established congressional policy to encourage through legislation contributions by individuals to charitable and certain other eleemosynary institutions, the fact remains that section 162 (a) provides for a deduction from gross income, and the requirement that one seeking a deduction must bring himself clearly within a statutory provision authorizing the same is not vitiated by that policy. Petitioner cannot bring itself within the provisions of section 162 (a) under the facts and circumstances disclosed by this record. Petitioner is a trustee only with respect to the provisions of the will of John, but it is Henry's will which has the effect, in the words of the statute, of "permanently * * * (setting) aside for the purposes and in the manner specified in section 23 (o)" an amount to be used exclusively for charitable purposes. Henry's trustee, because the trust under Henry's will did so permanently set aside the sums here in controversy for charitable purposes, would have the right to claim the deduction here sought by John's trustee but only after its distribution to him by petitioner. No deduction may be permitted John's estate under section 162 (a) for there is no provision in his will which permanently sets aside any amount of income or corpus for charitable purposes. The "setting aside" necessary to qualify an amount for deduction must be accomplished by the will of the donor and is not accomplished by the act of a fiduciary independent of such testamentary

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) Subject to the provisions of subsection (g), there shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. * * *

provision. Regs. 118, sec. 39.162–1; *Estate of J. B. Whitehead*, 3 T. C. 40, affd. 147 F. 2d 977.

Petitioner urges that, although it is true that John's will does not specifically provide for the setting aside of any sum for charitable purposes, it does provide that Henry should have the power to appoint one-fourth of the corpus of John's estate, to take effect at the death of his widow, to charitable institutions and that, therefore, we should read both instruments together and conclude that the designation of the amounts here involved for charitable purposes was provided by the will of John and that, therefore, John's trustee should have the right to make the deduction here claimed. We are unable to arrive at this conclusion because the record clearly indicates that, at John's death, Henry then had the power at any time during his life, he having survived John, to appoint his share of the corpus of John's estate entirely to the lineal descendants of John to the exclusion of any charity or he had the power to appoint partly to one and partly to another, with no designation by John as to the share to be given to either. To be deductible as a gift to charity, income must be irrevocably set apart to that end. *Boston Safe Deposit & Trust Co. v. Commissioner*, 66 F. 2d 179 (C. A. 1, 1933), certiorari denied 290 U. S. 700. It is noteworthy too that the petitioner at no time had authority under the will of John or Henry or by order of any court to make distribution of income or corpus in its hands to any of the charitable institutions appointed by Henry. Its sole power, as finally determined at the close of the litigation referred to above, was to distribute the amounts of income or corpus, appointed by Henry, only to Henry's trustee. Henry's trustee was the fiduciary who had the power and duty to distribute to the charities and this by virtue only of the provisions of Henry's will.

We think it significant too that, upon petitioner's finally distributing Henry's share of the corpus and income of John's estate to Henry's trustee, no one would be in a position to say that the entire amount here sought as a deduction would be paid to the charitable institutions appointed by him, for it is obvious that such amount must bear its fair and lawful share of the expenses of Henry's trustee in administering his trust and that only the remaining portion thereof would eventually be distributed to the charity. The petitioner has not brought itself within the provisions of section 162 (a) and may not deduct from gross income thereunder any amount as having been permanently set aside in its hands to be paid to the charitable institutions who were beneficiaries of Henry's trust. See *Fidelity Trust Co. v. United States*, 253 F. 2d 407 (C. A. 3, 1958), affirming 253 F. Supp. 407 (W. D. Pa.), wherein, on material facts identical with those here involved, the court reached a like conclusion with respect to petitioner's taxable year 1952.

Petitioner alternatively contends that if the amount here in controversy is not deductible under section 162 (a), then it is deductible under section 162 (b),[2] because the decision of the Supreme Court of Pennsylvania which upheld the right of Henry to appoint to his sister and the involved charities was handed down early in January of 1954, thus having the effect of making payable the income in dispute within 65 days of the close of 1953 and rendering it deductible in that year under section 162 (d) (3).[3] Petitioner's contention is without merit.

Income of estates becomes taxable to beneficiaries and deductible by estates at the point where such income becomes distributable or payable to the beneficiaries. It is well settled that the test which indicates that such income is or is not distributable is whether the beneficiary has a present right to receive it from a fiduciary solely upon his or his representative's demand. *Freuler* v. *Helvering*, 291 U. S. 35; *Estate of Peter Anthony Bruner*, 3 T. C. 1051; *Horace Greeley Hill, Jr.*, 24 T. C. 1133. In this respect petitioner occupies a position on the record before us which peculiarly points to the nondistributability of the estate income in question. As petitioner has indicated on brief, there is no provision of State law which would prevent payment by petitioner of the 1953 income of the John Walker estate at any time it saw fit to do so. It did not see fit nor did it have any obligation by law or otherwise to make such payment until July of 1954, more than 180 days subsequent to the close of the taxable year in which the income had been received. Any demand for payment by MacCloskey would

---

[2] Sec. 162 (b). There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

[3] Sec. 162 (d). RULES FOR APPLICATION OF SUBSECTIONS (b) AND (c).—For the purposes of subsections (b) and (c)—

 * * * * * * *

(3) DISTRIBUTIONS IN FIRST 65 DAYS OF TAXABLE YEAR.—

(A) General Rule.—If within the first 65 days of any taxable year of the estate or trust, income of the estate or trust, for a period beginning before the beginning of the taxable year, becomes payable, such income, to the extent of the income of the estate or trust for the part of such period not falling within the taxable year or, if such part is longer than 12 months, the last 12 months thereof, shall be considered, paid, credited, or to be distributed on the last day of the preceding taxable year. This subparagraph shall not apply with respect to any amount with respect to which subparagraph (B) applies.

(B) Payable Out of Income or Corpus.—If within the first 65 days of any taxable year of the estate or trust, an amount which can be paid at intervals out of other than income becomes payable, there shall be considered as paid, credited, or to be distributed on the last day of the preceding taxable year the part of such amount which bears the same ratio to such amount as the part of the interval not falling within the taxable year bears to the period of the interval. If the part of the interval not falling within the taxable year is a period of more than 12 months, the interval shall be considered to begin on the date 12 months before the end of the taxable year.

necessarily have been complied with only at the will and behest of petitioner. It seems clear to us that under no theory of the law could MacCloskey have made a successful demand upon petitioner for payment prior to the approval of petitioner's second final account and order of distribution by the Orphans' Court entered July 13, 1954. Never until that date had petitioner's custodianship and management of the 1953 income here in dispute been passed upon by any court. It was the 1952 income of the John Walker estate which might be considered to have become payable upon the entry of its decision by the Supreme Court of Pennsylvania, January 4, 1954, for petitioner's management of that income had been approved and an order of distribution entered prior to that date.

*Decision will be entered for the respondent.*