## Bellian Estate

*Wilson & Salmon*, for executor.

*A. G. Helbling*, for Clarence G. Bellian.

*Samuel C. Holland, Jr.*, and *W. Walter Braham*, for John R. Bellian.

REED, P. J., October 30, 1959.—John M. Bellian died August 31, 1956, a resident of Franklin Township, Beaver County. His last will and testament was duly probated and is of record in the Register of Wills Office of Beaver County, in Will Book vol. 44, p. 509. Letters testamentary were granted to Beaver County Trust Company on September 5, 1956. On July 28, 1959, said fiduciary filed petition for a citation upon

Clarence G. Bellian, son of said decedent, to show cause why he should not refrain from interfering with the entry of the officers and agents of said fiduciary upon the farm owned by said decedent for the purpose of making sale of a herd of dairy cattle, alleged to have been the property of decedent at the time of his death, and to refrain from damaging said herd in any manner whatsoever. A citation as prayed for was directed to issue returnable to August 18, 1959. An answer to the petition and citation was filed by Clarence G. Bellian on August 11, 1959, alleging ownership of the herd of cattle, or a part thereof as being in him, by virtue of an agreement with decedent and further alleging in the alternative that the herd was bequeathed and devised to him and his two sisters by the "seventh" paragraph of decedent's will and that since decedent's death he has acquired the interest of his two sisters by instruments of transfer to him; hearing on said petition and citation was had on September 21, 1959, at which time testimony was taken and is now transcribed of record.

Paragraphs first, second and third of decedent's will made certain cash bequests to certain grandchildren and two of his children.

Paragraph fifth devised a 65-acre farm with all buildings and improvements thereon, in Lawrence County, to two of his children.

Paragraph sixth devised a five-room cottage, etc., to a daughter for life, "with remainder to those entitled to the residue of decedent's estate."

Paragraph eighth of decedent's will devises and bequeaths the residue of his estate to three of his children and reads as follows:

"All the rest, residue and remainder of my estate, of whatsoever kind and nature and wheresoever situate, including, but not limited to, stock in one or more savings and loan associations, cash on hand and on de-

posit in checking and savings accounts, and tract of Twenty-five (25) Acres of land, more or less, in Franklin Township, Beaver County, known as the Goodman property, I give, devise and bequeath unto my children, John R. Bellian, Mary A. Gongaware, and Beverly Bellian Volano, share and share alike, to be theirs absolutely."

Paragraph seventh of decedent's will provides:

"My farm, consisting of tract of One hundred nineteen (119) Acres and a tract of Two and one-fourth (2¼) Acres, all located in Franklin Township, Beaver County, Pennsylvania, together with all buildings and improvements thereon and together with all farm machinery and equipment thereon or used in connection therewith, I direct shall be sold by my Executor at either public or private sale and the net proceeds thereof, after expenses of such sale, distributed as follows:—Three sixths thereof to my son, Clarence G. Bellian, to be his absolutely provided he survive me for sixty days, and, if he should predecease me or fail to survive me for sixty days, I give, devise and bequeath the same to his children surviving him, share and share alike, to be theirs absolutely; in the event any of said children should be minors, I appoint my daughter, Helen Gangloff, Guardian of the estate of each and every of such minor children and, if her services should not be available, I hereby appoint Beaver County Trust Company, New Brighton, Pennsylvania, in her place and stead as such guardian;

"Two sixths thereof to my daughter, Helen Gangloff, now residing at New London, Connecticut, to be hers absolutely;

"One sixth thereof to my daughter, Beverly Bellian Volano, to be hers absolutely.

"If my son, Clarence G. Bellian, should desire to purchase the said farm and equipment, it is my hope that he will be given an opportunity to acquire the

same at fair market value before any public sale is made."

In order to decide the question before us it is necessary that we interpret the provisions of paragraph "seventh" of decedent's will and particularly that we determine what is included in the expression or words "together with all farm machinery and equipment thereon or used in connection therewith." More specifically, we must determine whether the herd of dairy cattle was included in said expression.

In this Commonwealth the rules or canons of construction are clearly settled. " ' "The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances" ' ' ": Richley Estate, 394 Pa. 188, 193, and cases cited.

"And, while the words employed in a will necessarily constitute the gauge of the testator's intent, . . . a construction that would lead to a highly improbable result is to be avoided, if at all possible; and a meaning conformable to the testator's plausible intent should be ascribed to his words if agreeable to reason": . . . Fahey Estate, 360 Pa. 497, 500.

In Willing Estate, 18 D. & C. 2d 11, 17, President Judge Klein, of the Orphans' Court of Philadelphia County, succinctly summarizes the appellate decisions on rules of construction as follows:

"The criterion for the construction of every will is testator's intent . . .

" 'Every will is in a sense unique and therefore precedents are of little value; . . . Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another: . . .'

"In Walker Estate, 376 Pa. 16 (1954), the late Justice Allen M. Stearne said, at page 18:

" 'In construing a will it is the court's first duty to examine the will and, if possible, ascertain its meaning without reference to canons of construction.'

"Justice Stearne said further at page 22:

" 'We are required to consider intent from the whole will, construed from its four corners: . . . Regard must be had to the whole scheme, and if it is found that a particular intent is inconsistent with a general intent, the former must give way to the latter: . . . A construction will be avoided which would lead to an unnatural, improbable or absurd result, and which, under all the language in the will, would constitute a highly improbable testamentary intent: . . .' "

Decedent's will is dated June 6, 1956, less than three months prior to his death. It evidences that decedent had full knowledge and understanding of what his estate consisted and provided for its complete distribution either by specific bequest or devise or by distributing the residue under paragraph eighth of the will.

Decedent left five children to survive him, namely, Mary A. Gongaware, Beverly Volano, Helen Gangloff, John R. Bellian and Clarence G. Bellian, all of whom are provided for in his will. It is to be observed, however, that the beneficiaries named in paragraphs seventh and eighth are not identical in that Clarence G. Bellian and Helen Gangloff are two of the beneficiaries under paragraph seventh but not under paragraph eighth, while John R. Bellian and Mary A. Gongaware are two of the residuary beneficiaries under paragraph eighth but are not beneficiaries under paragraph seventh. It is also to be observed that while expressing the "hope" that Clarence be given opportunity to purchase by paragraph seventh, decedent did not bequeath and devise his "farm" in Franklin Township "together with all buildings and improvements thereon and together with all farm

machinery and equipment thereon or use in connection therewith" to the beneficiaries therein named but directed that it be sold and that the net proceeds be distributed.

Ordinarily, the word "farm" includes the land and buildings, real estate devoted to agricultural purposes, raising cattle, dairying and the like: Wesche's Will, 4 App. Div. 2d 997, 169 N. Y. S. 2d 612. A farm is generally defined as a tract of land used for raising crops or rearing animals, one devoted to agriculture, stock raising or some allied industry: Board of Supervisors v. Cothran, 84 Cal. App. 2d 679, 191 P. 2d 506. See also 35 C. J. S. 746; Bouvier's Law Dictionary, vol. 2, p. 1189.

Generally speaking, cattle means bulls, cows, steers, yearlings, calves of the bovine genus. Cows or cattle in common parlance would be a farm or agricultural product that have their situs of production on a farm. " 'Machinery' is a word of common and everyday use. Primarily it may be defined as the works of a machine; the means and appliances by which anything is kept in action; the mechanism or work of a machine or machines; the working parts of a machine, engine, or instrument": 54 C. J. S. 893, and cases cited.

In 30 C. J. S. 295, the term "equipment" is defined as: "The act of equipping or fitting, or the state of being equipped, as for a voyage or an expedition; the collective designation for the articles comprising an outfit, whatever is used in equipping; the combination of all the elements necessary to carry out a project; that which is needful, or necessary as for the operation of a plant; the outfit, that is, tools, machinery, implements, appliances, etc., necessary to enable one to do the work involved; whatever is needed for efficient action or service; and it has been said that, although in its plain, ordinary, and usual application the word may embrace all the appliances and furnishings neces-

sary for, or usual in, the operation of an establishment or institution, it may nevertheless be restricted in its application, by the use of other words in the enactment or instrument in which it occurs."

Guided by these definitions and the canons of construction, we are of the opinion that the words "farm machinery and equipment" must be considered and interpreted together and that the phrase "farm machinery" is not so enlarged by the use of the word "equipment" as to include within its meaning the herd of cattle. The word "equipment" as here used is and was intended merely as comprehending the character of the items covered by the preceding words "farm machinery". The words "farm machinery and equipment" must be read and interpreted together. To hold otherwise would be to ignore the whole intent and scheme of distribution of decedent's will and lead to a highly improbable and unintended result.

We therefore find as a fact that the herd of cattle on decedent's farm was not included in the expression "farm machinery and equipment thereon or used in connection therewith."

Nothwithstanding Clarence G. Bellian conceding that decedent owned the farm and the farm machinery and equipment on the farm, excluding the herd of cattle, at the time of his death, he also contended that ownership of the herd of cattle was in him by virtue of the agreements he had with his father prior to his death for the operation of the farm. To establish this contention he offered the testimony of his sister, Helen Gangloff, and her husband, William Gangloff. This testimony does no more than to establish that at the time of the death of decedent's wife, he was the owner of the farm, the farm machinery and equipment, the herd of cattle and everything on the farm. It further establishes that sometime subsequent to the death of

decedent's wife decedent entered into an arrangement with his son, Clarence, that Clarence was to operate the farm on a two-thirds—one-third basis, that for a period of approximately one year before decedent's death this arrangement had been changed to a straight rental basis under which Clarence paid his father a rental of $80 per month for the farm. Part of these arrangements required that the original herd of cattle be kept intact by replacing several of the herd with new heifers each year. This was accomplished by raising them on the farm or by an occasional purchase. When the operating agreement or agreements was on a two-thirds—one-third basis, new purchases were "paid for out of farm funds." When the operation was on a lease basis, they were to be paid for by Clarence.

There is no evidence of any kind of a gift or of any legal transfer of ownership of the herd of cattle from decedent to Clarence.

All of the evidence clearly establishes ownership of the herd of cattle in decedent at the time of his death and we so find as a fact.

The prayer of the petition will be and the same is hereby made absolute.

### Decree

Now, October 30, 1959, it is hereby ordered, adjudged and decreed that Clarence G. Bellian be and he is hereby enjoined, restrained and prohibited from directly or indirectly in any manner interfering with the entry of officers and agents of the Beaver County Trust Company, executor of the estate of John M. Bellian, upon the farm owned by said decedent at the time of his death for the purpose of their making sale of the herd of dairy cattle, property of decedent at the time of his death, and to refrain from damaging said herd of cattle in any manner whatsoever.